180 P.2d 868

**YUMA COUNTY et al. v. ARIZONA EDISON CO.**

No. 4785.

Supreme Court of Arizona.

May 19, 1947.

John L. Sullivan, Atty. Gen., Earl Anderson, Asst. Atty. Gen., H. H. Baker, Yuma County Attorney, of Yuma, for appellants.

Snell, Strouss & Wilmer, of Phœnix, for appellee.

UDALL, Justice.

This is an appeal from a judgment voiding for want of jurisdiction an order of the State Board of Equalization increasing the valuation, for taxation purposes, of the electric, gas and water plants of the Arizona Edison Company in Yuma County. For convenience' sake this taxpayer, plaintiff in the court below, will be referred to as the Company, and the State Board of Equalization, one of the defendants in the lower court and an appellant here, as the Equalization Board.

A resume of the facts will make more understandable the legal problems involved. For the year 1943 the Yuma

County Assessor placed on its tax rolls three utilities belonging to the Company, as follows, viz.:

Electric plant and distribution system .................... $215,130
Gas holders, mains and services.. $ 95,140
Water plant, mains, services and meters .................... $160,150

These items total $470,420. The County Board of Equalization made no changes in this assessment. By statute, Sec. 73-108, A.C.A.1939, the State Tax Commission is created a State Board of Equalization and is required to meet on the first Monday in August, and it must complete its functions as an equalization board by the second Monday in August as upon the latter date, after having determined the final valuations for the state and each county thereof, it sets the state tax rate for the ensuing year (Sec. 73-109). On Monday, August 2, 1943, this Board met for the purpose of equalizing the valuation and assessment of all property throughout the State of Arizona. On Tuesday August 3d, the Board proposed a number of increases including a net raise of $1,035,000 on utility properties owned by the Arizona Edison Company and situated in four different counties in Arizona. The Company's three Yuma County utilities were, as a part of this total, given a proposed blanket raise of $200,000 by increasing their assessed valuation from $470,420 to $670,420. A telegram dated August 3, 1943, advising in detail as to all the proposed increases was sent to the Company at its home office in Douglas, Arizona, and was received by them the following morning. On August 4th, the Equalization Board sent a letter of the same tenor by registered mail and similarly addressed, which was received by the Company in Douglas at 8:30 a. m. on Friday. Both the telegram and the letter directed the Company to show cause on that same Friday, August 6th, at 1:30 p. m., why such proposed increases should not be sustained. At the appointed hour, Philip B. Shaw, President of the Company, together with attorneys, made a special appearance before the Equalization Board protesting the Board's jurisdiction to proceed with a hearing on such short notice. They also filed a written protest to the proposed increases. No evidence was submitted and, as a matter of fact, the entire proceedings cover but two pages of the reporter's transcript. On August 7, 1943, the Equalization Board by appropriate resolution denied the protest of the Company and sustained all of its proposed increases. The Board also directed that the increases be transmitted to the respective boards of supervisors with instructions to change the tax rolls in accordance therewith. No appeal was taken by the Company from this order of the Equalization Board increasing the assessed valuations of the Company's properties, though the new section 73-110 now expressly gives an aggrieved taxpayer this right.

The Company, on November 1, 1943, paid under written protest the first installment (one half) of the taxes levied against all of its properties in Yuma County. Then, on November 9, 1943, it brought the instant suit, doubtless under the provisions of Sec. 73-841, asking that the order of the Equalization Board made August 7, 1943, increasing the assessed valuations of its properties, be adjudged and decreed invalid, void and of no effect. Further, it prayed for judgment against the defendants Yuma County and its Treasurer for $2,681.49, with interest, being the excess amount the Company had been required to pay by reason of the $200,000 increased assessment of its properties.

The cause was submitted to the trial court upon an agreed statement of facts and, by stipulation, the issues to be tried were carefully limited to these three propositions: (1) No proper notice was given to the Company of the hearing at which the increases complained of were made. (2) No hearing such as required by Sec. 73-108 was had. (3) The order which was made by the Equalization Board was so indefinite and uncertain as to invalidate the increased assessment. The trial court found for the Company and entered judgment as prayed for in its complaint. From this judgment the defendants have appealed to this Court. While the assignments of error detail the general proposition that the judgment of the court is contrary to law and not sustained by the evidence, we believe that this appeal may well be determined upon the two jurisdictional propositions of the Company (1 and 3, supra), viz.: the sufficiency of notice and the indefiniteness and uncertainty of the order for increase made by the Board.

Sec. 73-108 in setting out the powers and duties of the State Equalization Board provides in part that: "* * * The board may require any county board of supervisors, or clerk thereof, to furnish statements showing the assessment of the property of any person within the county. It shall consider and equalize such assessments and, after hearing, may increase the assessment of any person above the amount returned by the county board of equalization, when said assessment shall appear to be too low, *first giving notice by registered letter to such person of its intentions so to do, and of the time and place of hearing.*" (Emphasis ours.)

The Company claims that under the facts previously recited, neither proper notice nor an adequate hearing was afforded them and, therefore, these being mandatory provisions of the statute and conditions precedent to any valid order of the State Equalization Board increasing the assessment of an individual taxpayer, the Board's action in question was without jurisdiction and, therefore, a nullity. It was upon these bases that the learned judge in the court below found for the Company. And it is clear that this finding is well supported in law, for although notice requirements are

liberally construed where the statute either makes no provision for notice or merely provides generally that notice shall be given, still the rule is more stringent where the statute details the method of giving notice; "* * * if the statute provides for notice to be given, (as does 73-108 quoted in part above) *the notice which is prescribed must be given,* and the failure to do so will render any order of the board void." 61 C.J., Taxation, sec. 973. (Emphasis supplied.) See also 39 Am.Jur., Notice, sec. 9, p. 237; Copper Queen Consol. Min. Co. v. Board, 7 Ariz. 364, 65 P. 149; People ex rel. Bracher v. Orvis, 301 Ill. 350, 133 N.E. 787, 24 A.L.R. 331; Beveridge v. Baer, 59 S. D. 563, 241 N.W. 727, 84 A. L.R. 197.

Nor can there be any question of waiver of notice here for the Company specifically stated that its other objections were made "without waiving its foregoing objection (of insufficient notice) to the proceeding." And this is certainly not indicative of a "voluntary and intentional relinquishment of a known right, or such conduct as warrants an inference of relinquishment of such right" as is required for waiver. Southwest Cotton Co. v. Valley Bank, 26 Ariz. 559, 227 P. 986; Meason v. Ralston Purina Co., 56 Ariz. 291, 107 P.2d 224.

By reason of the short duration of the Equalization Board meetings the notice to the taxpayer required by statute must, of necessity, be short. But we cannot approve as being a reasonable notice the five hours allowed in the instant case. With the Arizona Edison Company having properties on the Maricopa County tax rolls and offices in the City of Phoenix, we are at a loss to understand why the Equalization Board sent the notice to the home office of the Company at Douglas instead of to Phoenix. Were this practice consistently followed, many of the large corporate taxpayers of Arizona with home offices out of the State could never receive timely notice of an increased assessment as is required by our taxing statutes. Even were this a matter of acquiring service in a civil suit, no such cumbersome or outmoded procedure would have been followed.

Another error in the procedure of the State Board of Equalization was in making a blanket increase in assessment upon the three properties owned by the Company in Yuma County. The order required the assessment of appellee's "Electric, Gas & Water Plant" to be increased "from $470,420 to $670,420, making a net increase of $200,000", although as previously set forth, the properties were separately listed and assessed on the taxpayer's return. The order of the State Board gave no instruction as to how much of the $200,000 increase was to be applied to each of the three utilities. Because of this indefiniteness and uncertainty, the Clerk of the local Board of Supervisors on August 16, 1943, telephoned the State Tax Commission requesting instructions. The Secretary of the Tax Commission replied by letter dir-

ecting that the increases be pro-rated, but as the Tax Commission was no longer sitting as the Board of Equalization, directions in the nature of an equalizing order could have no effect.

Secs. 73-403 and 73-404 require that the taxpayer separately list his properties for assessment purposes. Sec. 73-412 provides that, among other things, the assessment roll be similarly drawn. These statutory requirements are more than a matter of form or technique. They embody real and substantial rights for the taxpayer.

As pointed out in Territory v. Copper Queen Consol. Min. Co., 13 Ariz. 198, 108 P. 960, 966:

"Judge Cooley says: 'When two parcels are owned by the same person, if the statute requires a separate assessment, obedience to the requirement is essential to the validity of the proceedings. It cannot be held in any case that it is unimportant to the taxpayer whether this requirement is complied with or not. Indeed, it is made solely for his benefit; it being wholly immaterial, so far as the interest of the state is concerned, whether separate estates are or are not separately assessed. And where a requirement has for its sole object the benefit of the taxpayer, the necessity for a compliance with it cannot be made to depend upon the circumstances of a particular case, and the opinion of a court or jury regarding the importance of obedience to it in that instance. That method of construing statutes would abolish all certainty.' * * *

"Upon the raise being made it (the taxpayer) had the legal right to determine upon which, if any, of the claims so raised it would pay."

In the case at bar, the amount of blanket increase in assessment to be applied to each of the three properties was a matter of real importance to the taxpayer. It must determine to which increase, if any, it objected in order to pay under protest and otherwise perfect its appeal, if necessary, to the Superior Court as provided in Sec. 73-110. In fact, under the order as given, it had no idea which properties were increased, and thereby had no way of even determining upon which property or properties it must marshal its proof for appeal. In less favorable times should this or any similarly situated taxpayer be unable to pay all taxes, the ability to redeem at least some holdings would be made impossible were a single tax lien created against all properties instead of separate liens, some of which the taxpayer might be able to satisfy. Sec. 73-806; Territory v. Copper Queen Consol. Min. Co., supra; State of Arizona v. Miami Trust Co., 61 Ariz. 499, 152 P.2d 131.

For the reasons suggested above, and others, the following rule, taken from our own case of State v. Cull, 32 Ariz. 532, 260 P. 1023, is set forth in 61 C.J., Taxation, Sec. 977, p. 756: "An order by a state

board of equalization directing an increase of valuation on property appearing on the county's equalized assessment roll should so definitely and certainly describe the property to be raised as to leave nothing for the local board to do except the ministerial act of making the extensions. If the order undertakes to confer on the county board the power to select from a greater amount of property * * * that property whose valuation is to be increased, the order is void for uncertainty." For additional authorities directly upon this point see also: People ex rel. v. St. Louis Merchants' Bridge Co., 268 Ill. 477, 109 N.E. 311; Board of Equalization of Saline County v. Hughes, 84 Ark. 347, 105 S.W. 577; Nashville Lumber. Co. v. Howard County, 89 Ark. 53, 115 S.W. 936.

In view of the disposition that must be made of this appeal, on other grounds, we see no occasion to consider the adequacy of the hearing accorded this taxpayer nor the extent of the hearing required under the provisions of Sec. 73-108. Suffice it to say that we are of the opinion that the Equalization Board can, of its own knowledge as to the value of taxpayer's property and with or without outside evidence, tentatively raise an assessment, and on the subsequent hearing of the order to show cause cast the burden upon the taxpayer to establish that the proposed increased assessment is excessive. 61 C.J., Taxation, sec. 974, p. 755; Hyden v. Breathitt County Board of Sup'rs, 244 Ky. 505, 51 S.W.2d

441; State Tax Commission v. Phelps Dodge Corp., 62 Ariz. 320, 157 P.2d 693.

Judgment affirmed.

STANFORD, C. J., and LaPRADE, J., concurring.