[redacted]

447 P.2d 545

**DEPARTMENT OF PROPERTY VALUATION of the State of Arizona, Petitioner,**

**v.**

**YUMA COUNTY BOARD OF SUPERVISORS and Robert Nissen, James Fuquay and Clark Yarwood, Members of the Yuma County Board of Supervisors, Respondents.**

**No. 9395.**

Supreme Court of Arizona.

In Banc.

Nov. 27, 1968.

[redacted]

Gary K. Nelson, Atty. Gen., James D. Winter, Asst. Atty. Gen., Phoenix, for petitioner.

Ronald F. Jones, Yuma County Atty., Yuma, for respondents.

John S. Schaper, Phoenix, for amicus curiae Buckeye Irr. Co.

Olgerd W. Kalyna, Phoenix, Special Counsel for Bd. of Sup'rs of Maricopa County and C. L. Sparks, County Assessor, Maricopa County.

McFARLAND, Chief Justice:

The Department of Property Valuation of the State of Arizona, by its Director, petitioned this Court to issue a writ of mandamus to compel the Yuma County Board of Supervisors and Robert Nissen, James Fuquay and Clark Yarwood, members thereof, and all persons acting in their behalf, to make changes on the county tax rolls as ordered by the Board of Property Tax Appeals, in accordance with the provisions of A.R.S. § 42–250, as amended, and to enter the totals on the tax rolls on the basis of such changes. After hearing, we issued the writ on August 21, 1968, which, in part, reads as follows:

"Under the statute we are of the opinion that the petition for Writ of Mandamus should be GRANTED.

"IT IS ORDERED: That a Writ of Mandamus shall issue, as prayed for in the petition, without prejudice to property owners' rights in any future action which may arise. A written decision will follow."

The appeal by the Department was made in accordance with A.R.S. § 42–245, as amended, which reads:

"B. In all cases where the county board orders a reduction in valuation of any property, the assessor or the department may appeal such decision to the state board in the same manner as provided in subsection A of this section."

This appeal was from the basis used by the Board of Supervisors in determining values which resulted in an across-the-board reduction and from a general order of the Board affecting *all* the property in these classes.

It is clear that the Board of Supervisors is given authority under A.R.S. § 42–241, 42–242, and 42–243, as amended, to hear complaints of property owners, but they went beyond this, and made a determination of values of *all* property in the classes.

A.R.S. § 42–241.01 (Oct. 15, 1967), provides that:

"C. The county board shall either grant or refuse the request of the petitioner, in whole or in part, as may seem just or proper. * * * [or] may correct any error or mistake * * *."

The function of the county boards is the application of their superior knowledge of local conditions to special cases, so as to equalize valuations within the counties. They are required to cooperate with the State authorities to help attain the goal of uniform valuations throughout the State, at full cash values. A.R.S. § 42–133, subsec. E, as amended. In individual cases their help can be invaluable.

A.R.S. § 42–123, as amended, provides that the State director shall:

"5. Prepare and revise manuals for use by the county assessors * * *."
and shall

"11. * * * assure a uniform valuation of all property throughout the state for property tax purposes, * * *."

A.R.S. § 42–136, as amended, provides that there shall be twenty-six classes of property which are listed and which include "farm lands" and "Grazing lands."

Approximately 1,800 parcels of farm land in Yuma County were assessed. Of these, about 600 appealed to the Yuma County Board of Equalization from the action of the assessor. The county board took the position that it was improper to assess all irrigable lands in the Yuma and Gila Valleys at $800 per acre and those in the Wellton-Mohawk and Dome areas at $600 per acre. The board decided that all such lands ought to be sub-classified in accordance with the U.S. Department of Agriculture, Soil Conservation Service's "Land Capability Classification," and, in accordance with the U.S. Department of the Interior, Bureau of Reclamation's "Productivity" groups. It, therefore, revised the land values downward to figures ranging from $300

to $600 per acre. The board also concluded that since some 600 tracts were being revalued to lower figures, it would be unfair to ignore approximately 1,200 other parcels whose owners had not requested relief, and included them in a blanket resolution covering all 1,800 properties. In all, or nearly all cases, the values were reduced. Individual appeals appear to have been taken in some or all of these individual cases.

On July 3, 1968, the State Department of Property Valuation filed with the State Board of Property Tax Appeals a notice of contest of the changes made by the Yuma County Board, and, on July 12, 1968, the tax appeals board notified the Yuma County Board of the contest, and ordered the latter to appear before it and justify the reductions. To this notice, the Yuma County Board replied that the State Board had no legal authority for its action, and refused to appear, allowing the hearing to proceed without opposition. After a fully-reported hearing, the State Board of Property Tax Appeals entered its "Order No. 1" directing the Yuma Board to use the valuations placed on the properties before the reductions. The Yuma Board then passed a resolution stating that Order No. 1 of the State Board of Property Tax Appeals was entered without "due process," and advised the latter that it would not comply and would use its own reduced values in placing the property assessments on the county's tax rolls.

The State Department of Property Valuation then filed with this Court its petition for a writ of mandamus to compel the Yuma County Board to comply with the State Board of Property Tax Appeal's order to enter the original values on the tax rolls.

In the hearing on the writ before this Court the Yuma County Board argued that because no notice was given to the property owners, as required by A.R.S. § 42–242, as amended, the order restoring the values to the original amounts was without due process, and therefore void, and that this Court should not issue a writ of mandamus requiring the Yuma County Board to comply with a void order. This argument misses the controlling legal point involved. A.R.S. § 42–242, as amended, reads as follows:

"§ 42–242. Increase of valuation; notice

"If the county board of equalization believes that the valuation of any property should be increased, it shall forward a copy of the notice of proposed increase by certified or registered mail to the person in whose name the property is listed and to the department at least five days prior to the July meeting of the county board, and no valuation may be raised by the board unless it is included in the notice. A copy of the notice shall be mailed to the person in whose name the property is listed. As amended Laws 1967, Ch. 107, § 36."

In the instant case, if individual property owners had justifiable complaints, the Board could have corrected errors and mistakes, and could have granted or refused the petitioners' requests in whole or in part. Had such action been taken here, this controversy probably would not have arisen. Instead, the Board acted not only upon the cases before it, but also on cases in which the property owners had not complained. Though the motive was to prevent a failure of equalization in the County, by lowering the values of 1,200 tracts of land in order that the 600 before the Board should not receive an unfair advantage, the method was highly improper. The Board chose to reject the State's classification of farm land, and use its own, based on soil conditions. While this action perhaps equalized the farm land in that County to the satisfaction of the Board, there is no legal basis whatever for such procedure, and such a procedure could upset the uniform valuation required by law.

The notice of contest filed with the State Board of Property Tax Appeals indicates that:

"The farm land values in Yuma County conform to a state-wide pattern developed by the Department of Property Valuation, and any deviation from those values would necessitate state-wide changes if

the Board of Property Tax Appeals is to maintain state-wide equalization of property values as required under Arizona Revised Statutes."

Because of the time factor involved, such a complete state-wide reappraisal would have jeopardized the revenues of all taxing units.

■ On the record before us, it is clear that the issuance of the writ of mandamus does not involve the merits of the method used in fixing the land values, and does not require a determination of whether lack of notice to the property owners of the increase in their assessments met due-process requirements. The latter question is the subject of an annotation in 84 A.L.R. 197. If any property owner involved in the assessments described above wishes to litigate the question of notice or due process in his individual case, our decision here does not prevent his seeking redress in the courts as provided by law. They are not parties to this action, and we hold that the order in this case is without prejudice to their rights. But the County Board of Supervisors may not take that action for them, as has been done on this occasion.

■■ The only issue in the case before us is the correct interpretation of A.R.S. § 42–250, as amended. That section contemplates that the local board (1) make all changes ordered by the State Board, and (2) as soon as such changes are made, add up the columns of valuation, and "enter all totals on the roll." This is short and clear, and there can be no mistake about its meaning. It is a purely ministerial act. From very early times it has been the rule that mandamus is the proper remedy to compel the performance of a ministerial act. In State v. Board of Supervisors of Yavapai County, 14 Ariz. 222, 127 P. 727, we said:

"The duty to extend, or cause to be extended, on the assessment-roll, the equalized values of all property of their county is clearly enjoined as a duty resulting from their office upon the board of supervisors and its clerk. * * * The writ of mandamus may be issued by the supreme * * * court to any * * *

board * * * to compel the performance of an act which the law specifically enjoins as the duty resulting from an office."

In addition to the above case, we have a specific statute which states:

"The Director [of the Department of Property Valuation] may * * * request the attorney general to initiate a mandamus action * * * if the director determines * * * that a county board of equalization has practiced discrimination in the valuation of property." A.R.S. § 42–123, subsec. B, para. 5.

Permanent writ of mandamus was properly issued.

STRUCKMEYER, BERNSTEIN and LOCKWOOD, JJ., concur.

NOTE: Vice Chief Justice JESSE A. UDALL being absent from the State August 21, 1968, Judge MOLLOY of the Court of Appeals, Division 2, acted in his stead.

MOLLOY, J. (dissenting):

I am unable to agree with the result reached by the majority. It seems to me that the pertinent statute clearly gives the approximately six hundred property owners, who petitioned for re-evaluation, a right to be heard before the State Board of Property Tax Appeals and that failure to give them notice of this hearing renders the increase in assessments as to their properties a nullity.

The appeal taken by the State Department of Property Valuation was in pursuance of A.R.S. § 42–245, subsec. B, as amended, which reads as follows:

"In all cases where the county board has ordered a reduction in valuation of any property, the assessor or the department may appeal such decision to the state board in the same manner as provided in subsection A of this section. *In the event of an appeal by the assessor or the department, a copy of the petition shall be transmitted by certified or registered mail on or before the date of the filing of the petition to the listed owner of the prop-*

*erty which is the subject of the appeal at the address shown on the then existing tax roll. The property owner shall be a party to any proceedings in the appeal.* [Emphasis added.]

The record makes it clear that no notice of any kind was given to the owners of the properties affected as to the hearing held before the Board of Property Tax Appeals on July 22, 1968, at which hearing this Board decided to reverse the decision of the Yuma County Board of Equalization and restore the values originally set by the Department of Property Valuation. Approximately 1,800 parcels were affected by this order. The order disposed of petitions then pending before the local board which pertained to approximately 600 parcels.

I cannot quarrel with the decision of the majority insofar as it holds that property owners who did not protest their original evaluations did not have to be given notice of this hearing. This is not, however, as found by the majority, because the Board had no power to grant an across-the-board decrease in evaluations. The statute provides:

"A. The board of supervisors of the county shall constitute the county board of equalization, and the clerk of the board of supervisors shall be its clerk.

"B. The board of equalization shall meet on June 1 each year and shall continue in session from time to time until its business is completed, which shall be not later than June 25, at which time it shall adjourn. During the year 1968 the county board shall meet at such additional times as may be necessary to hear all petitions properly filed with it as provided in this article. The board shall meet on the first Monday in July following and shall determine whether or not the raises and increases in valuations proposed at its June session shall stand.

"C. At its June session the county board *may change any valuation of property valued by the assessor.*" [Emphasis added.] 13 A.R.S. § 42–241, as amended.

Generally, when the power to "equalize" taxes is granted to a local board, courts have considered that such board has the power to raise or lower valuations generally, so as to equalize them, though not necessarily to change individual assessments. See, e. g., Suydam v. Merrick County, 19 Neb. 155, 27 N.W. 142 (1886); Hansen v. Wilder, 76 S.D. 438, 80 N.W.2d 306 (1957); Ballard County v. Citizens State Bank of Wickliffe, 261 S.W.2d 420 (Ky.1953); and 84 C.J.S. Taxation § 493, p. 931.

The broad power and responsibility cast by our statute upon the county board of equalization grants to that board the power both to equalize taxes generally throughout the county and also to give relief to particular complaining property owners. If it acts in the former capacity, its actions are legal, but, on an appeal to the State Board, it would be extremely onerous to require the giving of individual notice to every property owner affected by the appeal, including those who did not appear in any way before the local board. I would have no disagreement with a decision that notice of the appeal to the board of supervisors itself, as was given in this case, is sufficient as to those who never appeared to contest. See Ogletree v. Woodward, 150 Ga. 691, 105 S. E. 243 (1920).

However, in the case of those property owners who petitioned for relief, in pursuance of § 42–221, subsec. D, and who won their cases before the local board, certainly there should be observance of the required notice of the appeal hearing. The quoted portions, supra, of A.R.S. § 42–245 clearly require such notice in these cases, and I see no reason to ignore the law because there are 600 petitioners. In the abstract, one would conjecture that there may be a positive correlation between the degree of a wrong committed and the number of petitioners who consider themselves aggrieved.

The previous decision of our Supreme Court in Yuma County v. Arizona Edison Company, 65 Ariz. 332, 180 P.2d 868 (1947), seems controlling. In that case, our Court

dealt with a similar requirement of notice then contained within § 73–108 A.C.A.1939 [now A.R.S. § 42–144]. This notice requirement is substantially the same as here pertinent.[1] The function of the State Board, while acting as a board of equalization under § 42–144 is not dissimilar from its function while sitting as a board of appeal under § 42–245. What differences in function there may be are not such as to militate towards a notice requirement in the former and not in the latter. In Arizona Edison, supra, the Court held that the failure to follow the notice requirement rendered its action in raising an assessment a "nullity." [65 Ariz. at 335, 180 P.2d 868] This decision seems in line with decisions from other jurisdictions. See 84 C.J.S. Taxation § 503 (b), p. 947. That there was one large property owner in Arizona Edison, supra, rather than 600 smaller ones as in this, should not mandate a different result.

The majority opinion indicates that the opinion rendered is "without prejudice" to the right of the property owners to subsequently challenge "the question of notice or due process in his individual case." While, undoubtedly, this opinion leaves the right to future litigation open, it cannot remove the "prejudice" that results from the mandate issued by our Supreme Court. Under the statutory procedure, the 600 petitioners had won their cases, and no further affirmative action on their parts would have been necessary. Contrariwise, because of this order, the best that they can do is to pay their taxes under protest, if they happen to have the funds available, and litigate to get them back. See A.R.S. § 42–245, subsec. C.

While the decision rendered by the majority is a practical one, and the result, undoubtedly, of the exigency of ruling soon enough to permit tax rolls to be timely prepared, it is not in accord with fundamental concepts of fair play. The writ should have been denied insofar as the 600 petitioning property owners are concerned.

1. "The state board of property tax appeals may at any time require any county board of supervisors or the clerk thereof and the department to furnish statements showing the valuation of the property of any person within any county or within the state. The board shall consider and equalize such valuations and after hearing may increase or decrease the valuation of the property of any person, *provided that no increase in any valuation shall be made without first giving at least five days' notice, by certified* or *registered letter to the owner of the property to be affected at his address shown on the then existing tax roll, of its intention to do so and of the time and place of the hearing of the board at which such increase is proposed to be acted upon. The owner of the property so affected may appear at the hearing and be heard in protest of any such proposed increase."* [Emphasis added.] 13 A.R.S. § 42–144, as amended.