Lena **POLANSKY**

v.

Elliot **RICHARDSON**, as Secretary of Health, Education and Welfare.

No. 71–C–1593.

United States District Court, E. D. New York.

Nov. 22, 1972.

Lena Polansky, pro se.

Robert A. Morse, U. S. Atty., E.D.N.Y, by Henry A. Brachtl, Asst. U. S. Atty., for defendant.

## MEMORANDUM AND ORDER

COSTANTINO, District Judge.

In this action eighty-nine year old Lena Polansky seeks review of a denial by the Social Security Administration of her application pursuant to 42 U.S.C. § 402(b) (1971) for wife's insurance benefits. The Social Security Administration, alleging that the court is without subject matter jurisdiction, has moved to dismiss plaintiff's complaint. In addition to her opposition to the defendant's motion, plaintiff has cross-moved for summary judgment.

Lena Polansky first applied for wife's insurance benefits as the wife of Isaac Polansky on May 3, 1962. Her claim was initially denied upon a finding that she was no longer the wife of Isaac by operation of an Arizona divorce granted on August 6, 1924. This determination became final when on December 31, 1964 the Appeals Council of the Social Security Administration, following a hearing on the merits, affirmed the hearing examiner's decision denying plaintiff's claim. Although advised of her right to do so, the plaintiff never commenced an action to review the Administration's determination. Instead she made a subsequent petition to have her prior application reconsidered, which was promptly denied. On March 20, 1970, plaintiff once again applied for wife's insurance benefits. Her application was summarily dismissed and subsequent requests to obtain a hearing or review by the Appeals Council were denied. The dismissal of plaintiff's second application was based upon a finding that the prior denial of her claim was a bar to any further consideration of it, which finding was predicated upon the doctrine of *res judicata* as embodied in 20 C.F.R. § 404.937(a) (1972). This action was commenced to review the dismissal of plaintiff's second application.

The threshold issue confronting the court is whether it has jurisdiction to review an Appeals Council's decision of dismissal. The government asserts that where the Appeals Council dismisses, without a hearing on the merits, a claim on the basis of *res judicata* a federal district court is without authority to review that determination. This contention is bottomed upon section 405 of title 42 of the United States Code.

Section 405(h) reads in pertinent part as follows:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided.

Section 405(g) authorizes review by a federal district court of a "final decision of the Secretary made after a hearing" if such action is commenced "within sixty days after the mailing . . . of notice of such decision or within such further time as the Secretary may allow." It is the government's view that save for the limited judicial review permitted by section 405(g), section 405(h) is a total bar to any other form of judicial review of the Administration's decisions. In view of the fact that the federal courts have already spoken as to the meaning of section 405, the government's view is without merit.

■ In Cappadora v. Celebrezze, 356 F.2d 1 (2d Cir. 1966), it was held that section 405(h) "simply forbids attempts to review final decisions on the merits by any route other than that provided in § 405(g)." *Id.* at 5. In addition, that case held that section 10 of the Administrative Procedure Act, 5 U.S.C. § 1009 (now 5 U.S.C. §§ 701–706), authorized judicial review where the Administration had refused an applicant's request for a hearing on the merits. Since plaintiff's application for benefits was summarily dismissed, despite her timely requests for a hearing, the court concludes that it has jurisdiction to determine the validity of that agency action. 5 U.S.C. §§ 701–706 (1971); Cappadora v. Celebrezze, *supra*; see Leviner v. Richardson, 443 F.2d 1338 (4th Cir. 1971); Grose v. Cohen, 406 F.2d 823 (4th Cir. 1969).

The core issue, then, to be decided by this court is whether administrative *res judicata* as embodied in 20 C.F.R. § 404.937 (1972) bars plaintiff's latest application for benefits. In turn that determination will evolve upon the legal sufficiency of the Appeals Council's decision of December 31, 1964. Recent cases have held that where a final determination of the Social Security Administration is subject to a reopening pursuant to that agency's own regulations, 20 C.F.R. § 404.957 (1972), that determination should not be accorded finality and thus could not be a foundation for *res judicata*. Leviner v. Richardson,

*supra*, 443 F.2d at 1342; Grose v. Cohen, *supra*, 406 F.2d at 825.

Section 404.957(c)(8) provides that a final determination of the Administration may be reopened:

> At any time when:

> Such . . . decision is unfavorable, in whole or in part, to the party thereto but only for the purpose of correcting . . . error on the face of the evidence on which such determination or decision was based.

If in fact, then, the 1964 decision of the Appeals Council is legally insufficient, that decision, notwithstanding plaintiff's failure to commence a timely action of review, cannot properly be the basis of the Administration's summary dismissal of her subsequent claim.

There appears to be no controversy as to the operant facts of the 1964 decision, but rather a dispute as to their legal effect. Briefly summarized the following course of events occurred. In 1922 Isaac Polansky left his wife and family, then living at 618 East 135th Street, Bronx, New York and relocated himself in the State of Arizona. Two years later an *ex parte* decree of divorce was issued to him by an Arizona court. The record discloses that the jurisdictional basis for the divorce was founded upon Arizona's substituted service statute which permitted service by publication. The record further discloses that at the time of the divorce the abandoned wife resided at the same location from which her husband had earlier departed and that Mr. Polansky was aware of that fact. Finally, the record discloses that notwithstanding the fact that Mr. Polansky knew of his wife's address he did not include it in the affidavits accompanying his petition for divorce, as was required by Arizona law, and that he never filed an affidavit evidencing the fact that he had mailed a copy of the summons and complaint to his wife, which likewise was required by Arizona law. Arizona Revised Statutes, §§ 447, 448 (1913).

Mrs. Polansky has at all times alleged that she never received notice of the pendency of the divorce action. She contends that since Mr. Polansky did not

comply with the strict requisites of Arizona's substituted service statute the Arizona court which issued the divorce never obtained jurisdiction over her and therefore the divorce was a nullity and void as to her. The Appeals Council, however, ruled that the 1924 divorce was valid and binding upon her. It held that failure to obtain actual receipt of the summons and complaint was not controlling. Furthermore, it held that since Mr. Polansky had *"substantially complied"* with the Arizona statute and since there was no showing of actual fraud upon Mr. Polansky's part, the divorce was valid and thus immune from collateral attack.

■ On its face it is apparent that the Appeals Council's decision was based upon a misunderstanding of fundamental precepts of due process and an erroneous application of Arizona law. Quite simply, it is well established that neither "substantial compliance" nor intent to defraud are relevant on the issue of the adequacy of substituted service—specifically with regard to publication—as a jurisdictional predicate.

■■ It has long been the rule that actual receipt of process is not the test under either due process or the full faith and credit clause, but rather whether "such reasonable steps had been taken to give [the adverse party] notice as to bind [such person] . . .." Atherton v. Atherton, 181 U.S. 155, 172, 21 S. Ct. 544, 550, 45 L.Ed. 794 (1901). Indeed the essential ingredients of adequate substituted service are

whether or not the form of [the] substituted service *provided for such cases and employed* is reasonably calculated to give [a party] actual notice of the proceedings and an opportunity to be heard. If it is, the traditional notions of fair play and substantial justice . . . implicit in due process are satisfied. Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). (emphasis added).

Moreover, it has been held that where the means used is not reasonably calculated to apprise an individual of the pendency of an action, the court entertaining that action will not obtain jurisdiction over that person and any resulting decree will have no binding effect. Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also* Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945).

■ In Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942) the Supreme Court stated that

each state by virtue of its command over its domiciliaries and its large interest in the institution of marriage can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent. There is no constitutional barrier if the form and nature of the substituted service . . . meet the requirements of due process. *Id.* at 299, 63 S.Ct. at 213. (Citing Milliken v. Meyer, *supra*, 311 U.S. at 463, 61 S.Ct. 339, and Atherton v. Atherton, *supra*, 181 U.S. at 172, 21 S.Ct. 544).

Concomitantly, a decree of divorce rendered by a court devoid of jurisdiction can be collaterally impeached "even when the record purports to show jurisdiction." Williams v. North Carolina, *supra*, 325 U.S. at 229, 65 S.Ct. at 1095.

■ Service of process by means of publication has long been constitutionally suspect. In the landmark case of Mullane v. Central Hanover Trust Co., *supra*, it was stated:

It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts . . .. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed . . .. In

weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint. *Id.* 339 U.S. at 315, 70 S.Ct. at 658.

In that case the Court held that where a party's address was known mere publication would be insufficient service, rendering any ensuing judgment or decree void. The Court suggested that in such circumstances if the additional step of mailing the required notice had been taken, then service would have been adequate. See United States v. Smith, 398 F.2d 173 (3d Cir. 1968).

The Arizona law in effect at the time of the divorce decree was in complete conformity with the constitutional standards of due process. Section 447 of the Arizona Revised Statute which authorized service by publication reads in part as follows:

> When any party to the suit, his agent or attorney, shall make affidavit at the time of instituting the suit . . . that the defendant is a nonresident of the state, or that he is absent from the state . . . a summons shall be issued as in other cases, and service shall be made by making publication thereof in some newspaper published in the county, if there be any newspaper published therein . . . where the suit is pending. Such summons shall be published at least once in each week for four successive weeks, and the service shall be complete thirty days after the first publication.

Where the party seeking the divorce knew the address of the adverse party section 448 of the Arizona Revised Statute required that that fact be stated and that

> the plaintiff, his agent or attorney . . . forthwith deposit a copy of the summons and complaint in the post office, postage prepaid, directed to the defendant at his place of residence, and the affidavit of the person so mailing said copies shall be prima facie evidence thereof.

An essential element of the above provision was that where the address of the adverse party was known a mailing of notice would have to be forwarded to that party "forthwith." Consequently, compliance with the statute required the prompt mailing of the summons and complaint to the other party and the filing of an affidavit by the person placing the documents in the mail stating the date of such mailing. In the case of Crook v. Crook, 19 Ariz. 448, 170 P. 280 (1918) the Supreme Court of Arizona sustained a lower court's decision vacating a judgment of divorce on the basis that plaintiff's proof of service failed to show that the summons and complaint had been mailed promptly. In a subsequent case that same court held that where a statute requires notice to be given, such provision must be stringently complied with or the proceeding involved would be rendered void. Yuma County v. Arizona Edison Co., 65 Ariz. 332, 180 P.2d 868, 870 (1947); see D. W. Onan & Sons v. Superior Court, 65 Ariz. 255, 179 P.2d 243, 249–250 (1947). Similarly, the Arizona Supreme Court has held that where there is deficient service of process jurisdiction will not be obtained over the party improperly served and thus any resulting judgment would be void. Marquez v. Rapid Harvest Co., 99 Ariz. 363, 409 P.2d 285, 287 (1965); Moeur v. Ashfork Livestock Co., 48 Ariz. 298, 61 P.2d 395, 397 (1936). In addition the Arizona courts have held that a judgment rendered without the requisite jurisdictional predicate, *i. e.,* proper service of process, can be collaterally attacked. Boyle v. Oro Plata Mining and Milling Co., 14 Ariz. 484, 131 P. 155, 156–157 (1913).

■ In light of the above discussion of law the court concludes that the *ex parte* divorce issued against Lena Polansky was null and void as to her. That conclusion is warranted in the face of the uncontroverted evidence proffered in this action in that the party against whom the *ex parte* proceeding was brought has alleged non-receipt of notice of the pendency of the proceeding, that

the party initiating the proceedings had knowledge of his adversary's address, and that the record is devoid of proof of the use of any other means of service besides publication. Consequently, the court holds that the Appeals Council's finding as to the validity of the divorce in question was error as a matter of law, and constituted error on the face of the evidence. Since the Appeals Council's decision was premised upon that erroneous finding it cannot be an appropriate bar to plaintiff's latest application for benefits.

In view of the fact that the only dispute in this action involved the aforementioned issues of law, they being resolved in favor of the plaintiff, her motion for summary judgment is granted and defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

Accordingly, the Social Security Administration is ordered to process Mrs. Polansky's claim for wife's insurance benefits. Having failed to raise any further objection to the granting of such benefits beyond those at issue in this action, the Administration should grant them promptly.