513 P.2d 153

**Robert S. LEWIS, Appellant,**

v.

**Emerich EHRLICH and Elizabeth Ehrlich, his wife, dba Two Bit Ranch, Appellees.**

**No. I CA–CIV 2002.**

Court of Appeals of Arizona, Division 1.

Aug. 14, 1973.

Rehearing Denied Sept. 7, 1973.

Review Denied Oct. 16, 1973.

C. D. Owens, Jr., Scottsdale, for appellant.

Sullivan, Mahoney & Tang by Thomas Tang and William P. Mahoney, Jr., Phoenix, for appellees.

KRUCKER, Judge.

Appellant, Robert S. Lewis, plaintiff below, filed an action against the appellees, defendants below, for conversion, unjust enrichment and for the right to equitable redemption. Plaintiff had boarded a registered Arabian stud horse at defendants' ranch, and a board and feed bill of $375.20 had accrued, which was past due. Defendants held a sale and sold the horse on April 29, 1971.

The case was tried to the court without a jury on December 15, 1971, and resulted in a judgment in favor of the defendants.

The questions presented are: (1) Whether there was a legal sale of plaintiff's horse, (2) whether plaintiff was foreclosed to exercise any equitable right of redemption, and (3) whether the purchase of the horse at the sale and subsequent resale of it amounted to conversion.

A.R.S. § 33–921 provides:

"A. Persons who furnish pasture or feed for livestock to be fed on the prem-

ises of the person furnishing the pasture or feed shall have a lien on the stock for the amount of the charges due and unpaid. A person having such lien may take possession of and retain the stock until the charges are paid. When possession has continued for twenty days after the charges accrue, and the charges have not been paid, the person taking possession of the stock *shall notify the owner in writing* to pay the charges, *if he is in the county* where the stock is located and is known to the person holding the stock. On the owner's failure to do so within ten days after notice is given, the holder of the stock, after five days notice posted in three public places at the county seat of the county in which the stock is located, may sell, at public auction, the stock or as much thereof as necessary to pay all charges and costs as provided in this section. From the proceeds of the sale he shall pay the charges, together with the costs of making the sale, and pay the balance, if any, to the person entitled thereto.

B. If the *owner does not reside in the county where the stock is retained, or is not known by the person holding possession of the stock, the person holding possession shall, instead of serving the notice as provided in subsection A, publish it at least three times in a newspaper published in the county where the stock is held*, or, if there is no newspaper published in the county, then by posting the notice in three public places."

Briefly, the facts are as follows. Robert S. Lewis was a livestock and horse dealer, buying, selling and trading horses at various horse shows and auctions. He apparently claimed Maricopa County, Arizona, as his residence for several years prior to the transaction we are dealing with here. However, he was in and out of the State and traveling a great deal.

Mr. and Mrs. Ehrlich, defendants below, operated a small ranch where they made a business of boarding horses and other livestock. There is no dispute as to the amount of the bill or the fact that it was past due.

The facts disclose that defendants sent Lewis a registered letter dated April 14, 1971, in care of Nancy O. Hopkins at a Scottsdale address. Miss Hopkins testified that Lewis did not stay or live at her home but had spent a few nights there sleeping on the couch. She stated that she had on one occasion paid some "board" money to the defendants for Lewis. The letter was returned to defendants marked "unclaimed, not at this address." The defendants then published the following notice three times in the Arizona Republic, a newspaper published in Maricopa County:

"ARAB stallion, fours years, (Faraon X AFASA). To be sold at public auction according to ARS 33–921, April 29, 2:30 p. m. Two Bit Ranch, 9815 North 108th Street, 948–2262."

The notice was published in said newspaper Monday, April 26, Tuesday, April 27, and Wednesday, April 28, 1971.

The facts further disclose that Lewis's fiancee telephoned him in El Paso, Texas, on April 25 and advised him that the horse was going to be sold for board on April 29. Plaintiff informed his fiancee that he would return to Arizona in a couple of days. The record is somewhat confusing as to the exact date when plaintiff did return, but on either May 1, 1971, or May 8, 1971, he went to defendants' ranch and offered to pay the amount due, plus one month in advance. They informed him that they could not accept the money since the horse had already been sold.

At the trial of this case there was much ado about plaintiff's residency status. Defendants claim that plaintiff was a non-resident and therefore subject to the notice requirement of A.R.S. § 33–921, subsec. B. Plaintiff claimed he was a resident and should have been given notice under A.R.S. § 33–921, subsec. A. Assuming, arguendo, that plaintiff was a non-resident, we find that defendants failed to follow the procedure under the portion of the statute which they claim applies.

■ A.R.S. § 33–921, subsec. A provides for a two-step procedure before a public sale takes place. The first step is the notification in writing served upon the owner to pay the charges. The owner of the stock then has ten days within which to pay the amount due to the holder of the stock. If the owner does not pay within the prescribed period, the holder of the stock then takes the second step. This consists of posting a notice of sale in three public places for five days. After the end of this five-day period the stock may be sold at public auction. The purpose of serving the notice of the charges on the owner is to give him the opportunity to pay the bill. The purpose of the posting of the notice of sale is to give the owner of the stock and the public an opportunity to be present at the sale and bid on the stock.

The foregoing explanation of A.R.S. § 33–921, subsec. A is important in view of the language of A.R.S. § 33–921, subsec. B, the section upon which defendants rely. Subsection B provides that instead of *serving the notice* as provided in subsection A, the holder of the stock, when the owner is a non-resident of the county or is unknown, can publish the notice three times in a newspaper in the county where the stock is held, or post the notice in three public places if there is no newspaper in the county. Defendants apparently read subsection B as meaning that the notice to pay the charges and the notice of sale can be lumped together and the stock can be sold the fourth day after the first publication in a newspaper. We do not believe that paragraph B can be read in the manner defendants have interpreted it. The only notice which is required to be *served* under subsection A is the notice required by the first step, i. e., the notice to pay the charges. It is this notice which the holder of the stock may either publish or post, depending on the existence of a newspaper in the county, if the owner of the stock is a non-resident of the county or unknown. Thereafter, the second step required by paragraph A, the posting of the notice of sale, must also be done in the case of an unknown or non-resident owner. Any other reading of the statute would create incongruous and unacceptable results. For example, under subsection B the notice can be posted in three public places if there is no newspaper in the county. Nothing in subsection B states how long the notice is to be posted before sale. Under defendants' interpretation, this posting is all that is necessary and apparently the sale could take place the day after the notice is posted. This cannot be. Furthermore, if we were to accept defendants' meaning, residents of the county would be given a ten-day grace period within which to pay the charges whereas non-residents of the county would not have the benefit of the ten-day period. This would not only be illogical but would also probably suffer from constitutional infirmities.[1]

■ It is evident that defendants did not follow the procedure required by A.R.S. § 33–921. When the legislature has directed the manner of giving notice affecting property rights, the statute must be strictly complied with. Johnson Service Co. v. Climate Control Contractors, Inc., 478 S.W.2d 643 (Tex.Civ.App.1972); c. f., Yuma Co. v. Arizona Edison Co., 65 Ariz. 332, 180 P.2d 868 (1947). Defendants' sale of the horse constituted a conversion. 18 Am.Jur.2d Conversion § 27; c. f., Whitney v. Adams, 66 Vt. 679, 30 A. 32 (1894).

The judgment of the trial court is reversed and this case is remanded for a new trial.

HATHAWAY, C. J., and HOWARD, J., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

---

1. We do not express any opinion on the constitutionality of A.R.S. § 33–921 since this appeal can be decided on other grounds.