649 P.2d 985

CAREFREE IMPROVEMENT ASSOCIA-
TION, an Arizona corporation; Clifford
N. Parsells; Edward Rowley; Rawhide
Capital Co., an Arizona limited partner-
ship; the Boulders Carefree Corp., an
Arizona corporation; Scottsdale-Care-
free Properties, an Arizona general
partnership; Daniel J. Donahoe, III,
trustee of the Helen Clark Donahoe Ir-
revocable Trusts; Desert Ranch, Inc., an
Arizona corporation; Lyle Anderson
Corp., an Arizona corporation, Plain-
tiffs-Appellees Cross-Appellants,

v.

CITY OF SCOTTSDALE, a municipal cor-
poration; Herbert Drinkwater; James
Bruner; Diane Cusack; Billie Gentry;
Dr. Heinz Hink; Jeff Schubert and
Charlie Smith, in their capacity as elect-
ed Mayor and members of the Council
of the City of Scottsdale, and not indi-
vidually, Defendants-Appellants Cross-
Appellees.

No. 1 CA–CIV 5902.

Court of Appeals of Arizona,
Division 1.

Jan. 19, 1982.

Rehearing Denied March 4, 1982.

Review Denied July 16, 1982.

Campana & Horne, P. C. by Thomas C. Horne, Martha B. Kaplan, Phoenix, for defendants-appellants cross-appellees City of Scottsdale, Mayor and members of City Council.

Streich, Lang, Weeks & Cardon, P. A. by William S. Hawgood, II, Michael P. West, Phoenix, for plaintiff-appellee cross-appellant Rawhide Capital Co.

Jennings, Strouss & Salmon by Jay C. Stuckey, Jr., Neil Vincent Wake, Phoenix, for plaintiffs-appellees cross-appellants Boulders Carefree Corp., Scottsdale-Carefree Properties, Donahoe, Desert Ranch, Inc., and Lyle Anderson Corp.

Thur & Preston by Richard R. Zielinski, Scottsdale, for plaintiffs-appellees cross-appellants Carefree Imp. Ass'n, Parsells and Rowley.

## OPINION

CORCORAN, Judge.

The appellees commenced this litigation to invalidate an annexation ordinance passed by the appellant City of Scottsdale (Scottsdale). Appellees moved for summary judgment on the ground that Scottsdale had failed to comply with the notice provisions of Arizona's open meeting law, A.R.S. §§ 38-431.01 to .09. The trial court granted summary judgment. We affirm its decision.

Although the action taken by the city council of Scottsdale involves annexation, this is not a "strip annexation" case. This is an open meeting law case. The open meeting law was first adopted in 1962. Laws 1962, Ch. 138. In 1978, the legislature adopted a declaration of public policy for the guidance of those charged with the interpretation of the open meeting law by adding A.R.S. § 38-431.09:

Declaration of Public Policy.

It is the public policy of this state, reflected in this article [3.1], that meetings of public bodies be conducted openly. Toward this end, any person or entity charged with the interpretations of this article shall take into account the policy of this article and shall construe any provision of this article in favor of open and public meetings.

Laws 1978, Ch. 86, § 7. In construing the open meeting law and the declaration of policy, the language must "be liberally construed to effect their objects and to promote justice." A.R.S. § 1-211(B). This construction must be followed "unless such construction would be inconsistent with the manifest intent of the legislature." A.R.S. § 1-211(A).

The proceedings which led to this litigation were occasioned by the demise of the legislatively sanctioned practice of "strip annexation." Prior to July 1, 1980, Arizona law permitted this species of municipal enlargement, by which an incorporated municipality could annex a strip as little as ten feet wide encircling a broad expanse of unannexed land contiguous to the municipality. This action had the effect of depriving the owners of land within the encircled strip of the right to be annexed by any other municipality. See A.R.S. § 9-471(A)(1). It could also in effect confer a veto power over the incorporation of any other municipality within a six mile radius. See A.R.S. § 9-101.01.

In the spring of 1980, the legislature amended A.R.S. § 9-471 to eliminate the practice of strip annexation. This legislation, Laws 1980, Ch. 226, § 1, took effect on July 1, 1980.

In late June, 1980, certain Scottsdale city officials and members of the city council became convinced of the desirability of annexing a 10 to 25 foot strip of land encircling some 86 square miles north and west of the existing city limits.[1] They were professedly motivated in some part by the thought or fear that the City of Phoenix

---

1. At that time the City of Scottsdale encompassed approximately 89 square miles of land.

(Phoenix), which was likewise adjacent to the area in question, might conceivably attempt a similar "strip annexation" of the same land. Scottsdale considered strip annexation important because Scottsdale had more rigorous zoning and development standards than Phoenix and the area lay within the projected growth pattern of Scottsdale. If Scottsdale was successful in the strip annexation, it could exercise a strong degree of control over zoning and development in the 86 mile area. It is not disputed that the annexation would also have taken Scottsdale to within six miles of the unincorporated communities of Carefree and Cave Creek, thus requiring citizens in those areas to first offer to be annexed to Scottsdale as a condition precedent to incorporation as a municipality. A.R.S. § 9–101.01.

On Friday morning, June 27, at 8:00 a. m., the Scottsdale city council convened in a duly noticed session to consider annexation petitions to effectuate the strip annexation described above. One of the annexation petitions, rejected by the council because it contained conditions, was submitted by the appellee Rawhide Capital Company (Rawhide Capital). Questions were raised as to whether the annexation petitions acceptable to the council were sufficient in terms of the value of land represented, and one council member moved to postpone consideration of the proposed Ordinance 1304 until the next regular meeting of the council on Monday, June 30, at 5:00 p. m. This motion carried, and it thus became a matter of orally announced public record that the next consideration of the proposed strip annexation ordinance would be on Monday at 5:00 p. m. The proposed annexation had been the subject of some public attention, and members of the press were present at the meeting to observe the council's actions.[2]

Among the persons present at the Friday morning meeting of the council was James Paul, general partner of the appellee Raw-

hide Capital. Rawhide Capital owns Rawhide, a large tourist attraction within the area encircled by the proposed annexation.

After the meeting on Friday morning some city officials became convinced that it was strategically necessary for the city council to consider the proposed annexation ordinance on Monday morning, if possible. They were concerned that news media reports of the unsuccessful Friday morning meeting would prompt an attempt by Phoenix to annex the area before the regular council meeting late Monday afternoon. If Phoenix were successful in such an attempt, Scottsdale would be ousted from jurisdiction in the matter. The record indicates that Scottsdale city officials were making tentative plans before the close of business on Friday, June 27, to hold a council meeting the following Monday morning. Inasmuch as the mayor was not willing to call an early morning meeting to preempt annexation jurisdiction, the affirmative votes of four council members were necessary for the special meeting. By Saturday, June 28, city officials had received the express affirmative votes of three members, James Bruner, Jeff Schubert and Charlie Smith, and were confident enough of receiving the affirmative vote of a fourth council member, Diane Cusack, that they proceeded to give official notice of a special meeting to take place in city hall at 7:00 a. m. on Monday morning. Mayor Herbert Drinkwater and council members Billie Gentry and Dr. Heinz Hink opposed the calling of this special meeting.

The Arizona open meeting law requires that public notice be given of meetings of public bodies where public issues will be decided. The relevant notice provisions read as follows:

Notice of meetings.

A. Public notice of all meetings of public bodies shall be given as follows:

. . . .

---

2. We do not express any opinion as to whether the procedure followed by the city council in recessing the meeting which commenced at 8:00 a. m. on Friday to be resumed on Monday at 5:00 p. m. would comply with the requirements of the open meeting law in the absence of other notice. See A.R.S. § 38–431.02(E).

3. The public bodies of the cities and towns shall file a statement with the city clerk or mayor's office stating where all public notices of their meetings will be posted and shall give such additional public notice as is reasonable and practicable as to all meetings.

. . . .

C. Except as provided in subsections D and E, meetings shall not be held without at least twenty-four hours' notice to the members of the public body and to the general public.

D. In case of an actual emergency, a meeting may be held upon such notice as is appropriate to the circumstances.

E. A meeting may be recessed and resumed with less than twenty-four hours' notice if public notice of the initial session of the meeting is given as required in subsection A, and if, prior to recessing, notice is publicly given as to the time and place of the resumption of the meeting or the method by which notice shall be publicly given.

A.R.S. § 38–431.02. Pursuant to subsection (A)(3) of the statute, the Scottsdale city council had by Resolution 1290 [3] designated the city hall, police department headquarters and Eldorado Park as the places for posting "public notices." No claim has been made that these locations were not suitable for posting public notices. *Cf. Valley National Bank v. Brooks*, 3 Ariz.App. 340, 414 P.2d 189 (1966) (which deals with "public places").

After Scottsdale city officials determined on Saturday to hold the meeting regarding proposed Ordinance 1304 on Monday morning at 7:00 a. m., they proceeded to post notices [4] of the newly scheduled meeting and copies of the proposed ordinance and map in city hall, in the police department headquarters, and in a building at Eldorado Park. They also posted notices in the Scottsdale Center for the Arts, inside a building at Indian School Park, and in the municipal library. All notices were posted by 7:00 p. m. on Saturday evening. However, neither city hall nor the municipal library was open to the public between Saturday evening and 7:00 a. m. on Monday morning. Police headquarters were open to the public only if one were to press a buzzer and ask for admittance. The Arts building was open between the hours of 10:00 a. m. and 5:00 p. m. on Sunday and the buildings in the two parks were open to the public between 6:00 a. m. and 10:30 p. m. on Sunday. Nothing was posted on the property described in the proposed ordinance.

The city officials involved in the decision to hold the meeting and to post notices thereof conferred with the Scottsdale city attorney in regard to complying with the provisions of A.R.S. §§ 38–431.02(A)(3) and (C). It was determined that extra postings were necessary and that the three indicated extra postings would be sufficient. It was decided by city officials not to inform the news media until council member Diane Cusack had returned to the city on Sunday and given her express approval to the early Monday morning meeting. A member of

---

**3.** Resolution 1290, adopted by the city council on August 20, 1974, provides:

NOW THEREFORE, BE IT RESOLVED by the City Council of the City of Scottsdale as follows:

*Section 1*: That in accordance with the provisions of Subsection 3 of Section 38–431.02, Arizona Revised Statutes, notices of all regular, special and other meetings of the City Council and all agencies, boards and commissions of the City of Scottsdale and their committees and subcommittees shall be posted at City Hall, Police Department Headquarters and Eldorado Park, at least twenty-four (24) hours prior to the commencement time of said meeting and shall also set forth the time and place of all such meetings.

**4.** The notices read as follows:

NOTICE IS HEREBY GIVEN that the Mayor and City Council of the City of Scottsdale, Arizona, will hold a special meeting at 7:00 a. m., on Monday, June 30, 1980, in the Kiva, City Hall, 3939 Civic Center Plaza, Scottsdale, Arizona, for the purpose of considering revised Ordinance No. 1304, annexing certain territory contiguous to the existing limits of the City of Scottsdale.

The "revised Ordinance" related to a change in the property description of the strip to be annexed which was different from the description considered at the Friday morning meeting.

the media called a city official on Saturday and inquired whether "there was anything new" in regard to the proposed ordinance. He was answered in the negative. One city official testified that he made attempts to reach James Paul by telephone, without success. After city officials contacted Diane Cusack on Sunday afternoon, certain members of the media were contacted and informed that there would be a meeting early Monday morning. This was too late for any media publication prior to the meeting.

The special meeting was held as scheduled on Monday morning at 7:00 a. m. City hall ordinarily opens at 8:00 a. m., and this was the first council meeting in the memory of any witness to take place at 7:00 a. m. The council considered and passed Ordinance 1304. Aside from the members of the council and staff, the only person in attendance at the special meeting was an individual from the media. The meeting adjourned at 7:15 a. m. When the council convened for its regular weekly session at 5:00 p. m., the audience was informed that Ordinance 1304 had already been considered and passed by the council.

The position of appellee Rawhide Capital in this matter has been described. The strip annexed by the city pursuant to Ordinance 1304 runs through a parcel of land owned by the appellee Boulders Carefree Corporation. Boulders Carefree Corporation intends to develop a resort on this property and will be faced with conflicting zoning and development requirements. The appellee Carefree Improvement Association is a corporation whose members include citizens of the unincorporated communities of Carefree and the surrounding area.

Scottsdale raises two principal issues. Both are predicated upon the stringent standards applied in this jurisdiction as a prerequisite to the granting of a summary judgment. Rule 56, Rules of Civil Procedure. First, Scottsdale contends that it made a good faith effort to comply with the notice provisions of the open meeting law and that if it is given the benefit of all inferences which might be favorably drawn

in support of its position, the reasonableness and practicality of the notice it gave should be an issue for determination by the trier of fact, not susceptible to summary judgment. The second issue advanced by Scottsdale on appeal is that the subject matter of the special meeting on Monday morning, June 30 was such that circumstances of an "actual emergency" existed, so that the adequacy of its notice should be judged under the less stringent standards of A.R.S. § 38–431.-02(D).

The office of the procedural device of summary judgment is to determine without the necessity of a superfluous trial a claim which upon the established facts and the law can only be determined in favor of the moving party. See 6 *Moore's Federal Practice* § 56.02 (2nd ed. 1981). But summary judgment may be granted only when there is no genuine issue of material fact, or issue raised by conflicting inferences which may be drawn from an uncontroverted material fact. *Wisener v. State*, 123 Ariz. 148, 598 P.2d 511 (1979); *Rondelli v. County of Pima*, 120 Ariz. 483, 586 P.2d 1295 (App. 1978).

Thus, the critical issue in the context of the summary judgment on appeal is whether a reasonable finder of fact might conclude that the notice given complied with the requirements of the open meeting law. *See, e.g., Moore v. Maricopa County*, 11 Ariz.App. 505, 466 P.2d 56 (1970). If a reasonable finder of fact might so conclude, summary judgment would have to be reversed and the issue determined by trial in the usual manner.

While we agree with Scottsdale that what is "reasonable," "practicable," and "appropriate" would generally be a matter for determination at trial, that determination must be made in the present case based upon the legislative policy set forth in the open meeting law. In other words, the notice given, in order to come into at least the lower end of the spectrum of what might be considered "reasonable," "practicable," and "appropriate" must accord with the basic *policy* of the statute, which the courts are required to enforce by the mandate set forth in A.R.S. § 38–431.09.

If the open meeting law has a "core" provision, it is found in § 38–431.01(A). That subsection of the law provides:

Meetings shall be open to the public.

All meetings of any public body shall be public meetings and *all persons so desiring shall be permitted to attend and listen to the deliberations and proceedings.*

A.R.S. § 38–431.01(A) (emphasis added). The notice provisions in the open meeting law are obviously designed to give meaningful effect to provisions such as A.R.S. §§ 38–431.01(A) and 38–431.09. The goal of exposing the public decision-making process to the public itself could be significantly, if not totally thwarted, in the absence of mandatory notice provisions and their enforcement. *See* Government in the Sunshine Act: Opening Federal Agency Meetings, 26 Am.U.L.Rev. 154, 196 (1976). *See also Town of Paradise Valley v. Acker,* 100 Ariz. 62, 411 P.2d 168 (1966).

The meeting in question was held in unique circumstances. It was the first Scottsdale council meeting ever held at 7:00 in the morning, before the usual opening of city hall. The notices were posted during the weekend regarding a special meeting to commence before the opening of the city hall on the next regular day of business. These circumstances made it virtually impossible for any person to file a suit in the superior court before the meeting to challenge the adequacy of the notice. A.R.S. § 38–431.07; Rule 1.1., Superior Court Local Rules-Maricopa County. Far more importantly, however, it was convened to consider a proposed ordinance which as a matter of the declared public record had been scheduled for reconsideration on Monday afternoon at 5:00 p. m., the regular meeting time of the council. It is clear upon the record before us that there were "persons so desiring" to attend the council meeting at which proposed Ordinance 1304 was to be considered. It is equally clear that city officials and council members knew or had good reason to know that there were persons who desired to attend the meeting and who were not apt to become aware of the newly scheduled meeting by reason of notices posted on Saturday night and available for viewing on Sunday, only, at the places we have described. The council's actions and the manner in which it proceeded in this case are precisely the public actions contemplated by the legislature when it enacted the open meeting law. The supreme court interpreted the legislative intent as follows:

The intent of the open-meeting law is that legal actions—proceedings which constitute a "decision, commitment or promise made by a majority of the members of a public body," A.R.S. § 38–431(2) —"be conducted openly."

*Karol v. Board of Education Trustees,* 122 Ariz. 95, 98, 593 P.2d 649, 652 (1979). However, the supreme court has also indicated that "a minor deviation" from the requirements of the statute does not require that all actions of a public body be declared null and void "because equitable principles require a balancing of the rights of those involved." 122 Ariz. at 97, 593 P.2d at 651.

Although the open meeting law does not prescribe the hours during which those places where public notice will be posted must be open, the connotation of the words "public notice," would indicate that it must be posted in a place where members of the public have reasonable access. The city council had designated city hall, police department headquarters, and Eldorado Park as the places where the public notices would be posted. However, during the time the notices were posted for the Monday morning meeting there was no access at all to city hall, and there was very limited access to police department headquarters. Although the notices were posted at the places required by A.R.S. § 38–431.02(A)(3) and Resolution 1290, they were not effective "public notices" because of the public's lack of access to them. Scottsdale did post additional notices of the Monday morning meeting but these notices cannot be considered as substitutes for those required by statute and Resolution 1290. They can be considered only as "such additional public notice as is reasonable and practicable as to all meetings." A.R.S. § 38–431.02(A)(3).

■ Generally, whenever a statute requires that notice be given and does not specify the manner in which the notice is to be given, personal notice is required. *Cameron v. Shuttleworth,* 75 Ariz. 61, 251 P.2d 659 (1953); *Valley National Bank v. Stewart,* 53 Ariz. 328, 89 P.2d 493 (1939). When the statute directs the manner of giving notice affecting property rights, there must be strict compliance with the statute. *Lewis v. Ehrlich,* 20 Ariz.App. 363, 513 P.2d 153 (1973). *See also Mason v. Wilson,* 116 Ariz. 255, 568 P.2d 1153 (App.1977). When "jurisdictional notice" is mandated in a certain manner, any means of notice other than that prescribed is ineffective, *Hart v. Bayless Investment & Trading Co.,* 86 Ariz. 379, 346 P.2d 1101 (1959), and failure to comply with the mandated notice will render any action void. *Yuma County v. Arizona Edison Co.,* 65 Ariz. 332, 180 P.2d 868 (1947).

The first time the posted notices would have become "public" would have been at 8:00 a. m. on Monday morning when city hall and the police department headquarters opened for business. That is when they would have become available for public inspection—which was one hour *after* the noticed meeting was held. By emphasizing this time sequence, we do not mean to express any opinion as to the exact time when the 24 hours commences to run. A.R.S. § 38–431.02(C). *See Microwave Communications, Inc. v. FCC,* 515 F.2d 385, 390–97 (D.C.Cir.1974).

■ We agree with Scottsdale that technical violations and minor deviations from the requirements of the open meeting law should not render action by a public body null and void, so long as there is substantial compliance with the open meeting law. *Karol v. Board of Education Trustees, supra; City of Flagstaff v. Bleeker,* 123 Ariz. 436, 600 P.2d 49 (App.1970). However, this court must determine whether there has been substantial compliance by reviewing the whole of the proceeding, rather than its several parts. *City of Flagstaff v. Bleeker,* 123 Ariz. at 438, 600 P.2d at 51. In doing so, we must conclude that there was a misleading element inherent in the circumstances since the very persons desiring to attend the city council meeting had already been informed that it would be held at a later time. While good faith may be of some relevance in determining in some cases that there had been only a technical violation or a minor deviation from the requirements of the open meeting law, we are unable to conclude that good faith together with all of the other circumstances in this case suffices to make an issue of fact. And while the appellees have characterized the actions of Scottsdale's officials as evidencing an intent to withhold notice from the public, the absence of any such intent is plainly insufficient in and of itself to create an issue of fact.

■ Conceding every permissible inference to Scottsdale, we are unable to conclude in view of the specific circumstances in question here that the notice given by Scottsdale satisfied the requirement that "public notices" be posted in designated *public* places. A.R.S. § 38–431.02(A)(3) and Resolution 1290.

Scottsdale concedes that the Scottsdale City Charter defines "emergency" and the facts of this case admittedly do not fall within that definition. However, Scottsdale argues for the first time on appeal that the matter of the proposed strip annexation presented a "case of an actual emergency" and that, accordingly, the notice it gave must be judged or might be judged by a trier of fact to have been "appropriate" under such exigent conditions. *See* A.R.S. § 38–431.02(D), quoted above.

Appellees initially meet this argument with the proposition that Scottsdale may not urge a contention on appeal that it has not presented to the trial court. This is true, even on review of a summary judgment. *Crook v. Anderson,* 115 Ariz. 402, 565 P.2d 908 (App.1977); *Sullins v. Third and Catalina Construction Partnership,* 124 Ariz. 114, 602 P.2d 495 (App.1979). Scottsdale argues that it is incumbent upon this court as well as the trial court to review the entire record and, in effect, determine appellees' motion anew. This is not conformable with the concept of this court as an

*appellate court* sitting in review of determinations made by the trial court. Scottsdale does not get a hearing *de novo* upon appellees' motions. The rule of *Crook v. Anderson* applies, and we may consider only those contentions which were advanced in the trial court.

■ Apart from the foregoing, however, we do not perceive that the circumstances presented here could be fairly characterized as an "actual emergency" within the meaning of the statute. The word "actual" means "real" as opposed to "nominal" and "existing in fact" as opposed to "constructive" or merely "possible" or "conceivable." *See Mason v. Hart*, 140 Cal.App.2d 349, 295 P.2d 28 (1956). And "emergency" is generally defined as an unforeseen combination of circumstances which call for immediate action. *State v. Unosawa*, 48 Wash.2d 616, 296 P.2d 315 (1956).

The statute permitting strip annexations was on the books for many years. The subject was legislatively debated and the statute amended in the spring of 1980, months prior to the proceedings in question. Officials of Scottsdale wished to exercise "influence" or hegemony over the part of Maricopa County north and west of the city so that its zoning and other activities subject to regulation under the police power might be in conformity with that of Scottsdale rather than the ordinances of Phoenix in the event that Scottsdale eventually annexed the whole area encircled within the strip.

Even if it were clear that Phoenix was preparing a competing annexation proposal, and there is no evidence of such a competing proposal in the record, such circumstances do not in our view create an "actual emergency" within the meaning of the open meeting law. *Compare Mead School District No. 354 v. Mead Education Association*, 85 Wash.2d 140, 530 P.2d 302 (1975). To hold otherwise would dilute language of

the legislature which it has apparently chosen with care.

The appellees sought to recover their attorney's fees in the superior court. The trial judge denied recovery, and appellees have cross-appealed the issue.

Initially it should be observed that the statutory scheme of the open meeting law provides for a limited number of sanctions. Any business transacted in violation of the open meeting law is null and void. A.R.S. § 38–431.05. Any person violating the open meeting law is guilty of a class 3 misdemeanor. A.R.S. § 38–431.06. A person convicted of a class 3 misdemeanor can be incarcerated for a fixed time not exceeding 30 days, A.R.S. § 13–707(3), and be fined not more than $500.00. A.R.S. § 13–802(C). The court may also order that a successful plaintiff recover his reasonable attorney's fees from "the defendant state, political subdivision of the state or the incorporated city or town...." A.R.S. § 38–431.07.[5]

A.R.S. § 38–431.07 provides:
Equitable relief.

Any person affected by a legal action of a public body may commence a suit in the superior court for the county in which the public body ordinarily meets, for the purpose of requiring compliance with, or the prevention of violations of this article, by members of the public body, or to determine the applicability of this article to matters or legal actions of the public body. The court may order such equitable relief as it deems appropriate in the circumstances. *The court may also order payment to a successful plaintiff in a suit brought under this section of his reasonable attorney's fees, by the defendant state, political subdivision of the state or the incorporated city or town of which the public body is a part or to which it reports.*

5. The open meeting law does not by its terms provide that the defendant can in turn recover those attorney's fees from the responsible persons who actually violated the provisions of the open meeting law. Also, the open meeting law does not by its terms provide for any civil sanctions or penalties to be imposed against persons who violate it. In this case, the individual parties defendant are joined "in their capacity as elected Mayor and members of the Council of the City of Scottsdale, *and not individually.*" (Emphasis added.)

(emphasis added.) The emphasized provision in regard to attorney's fees has not previously been the subject of any extensive judicial discussion. *Cf. Ahnert v. Sunnyside Unified School District,* 126 Ariz. 473, 616 P.2d 933 (App.1980).[6]

All of the appellees contend that A.R.S. § 38–431.07 should be construed as creating a presumption that attorney's fees are to be awarded to a successful plaintiff in a suit seeking to enforce the provisions of the open meeting law in the absence of particular reasons which would make such an award unjust. Appellees prominently cite in this regard *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), involving Title II of the Civil Rights Act, and *Common Cause v. Stirling,* 119 Cal.App.3d 658, 174 Cal.Rptr. 200 (1981), decided under California's Brown Act, a "sunshine" or open meeting law.

We do not perceive either the compelling necessity or desirability of creating a presumption in this area. The legislature has employed the simple word "may" as an indicator of the extent of judicial authority. This is the classic language of discretion. The *Karol* case, cited above, indicates that substantial compliance with the provisions of the open meeting law may be sufficient. This suggests to us a recognition by our supreme court that our open meeting law, which imposed substantial changes in public meeting procedures, may not always yield clear black and white answers to persons seeking the most efficient lawful procedures. In sum, we perceive no indication that the legislature intended to establish a formal or informal presumption in regard to the recovery of attorney's fees, and we decline to create one.

This takes us to appellees' baseline contention that the trial court abused its discretion in failing to award attorney's fees in this case.

Certainly, the fact that the corporate appellees are substantial corporations able to finance litigation cannot, of itself, be controlling. No authority is cited to the contrary. Furthermore, the third group of appellees, incorporated as the Carefree Improvement Association, is simply a group of residents in the Carefree area whose rights were significantly affected by Scottsdale's actions.

One of the appellees has argued that Scottsdale's action was prompted by "imperialistic" motives. While this characterization does not significantly advance analysis, it serves to focus upon the fact that Scottsdale was intent upon expanding its influence into an unincorporated area, at the expense of a similar potential quest, real or imagined, by Phoenix. Courts, of course, can accord no respect to any particular municipal "life style," or choose among the various lawful manners by which one municipality exercises its police powers as opposed to the manner chosen by another nearby municipality. We cannot, therefore, share any particular sympathy for Scottsdale's objectives in attempting to rush through a strip annexation ordinance. *Cf. State ex rel. DeConcini v. City of Phoenix,* 74 Ariz. 46, 243 P.2d 766 (1952).

What Scottsdale undertook was concededly lawful when it was undertaken, and accordingly our focus under A.R.S. § 38–431.07 must be upon the extent of its attempted compliance with the open meeting law, and the extent to which the appellees' successful action was beneficial to others as well as themselves.

■ In the final analysis, the same factors which compel judgment for appellees lead us to conclude that a denial of attorney's fees was inappropriate in this case. While we are impressed on the one hand that Scottsdale officials consulted with the city's legal counsel, we cannot close our eyes to the fact that its officials chose to withhold any hint of its planned Monday morning meeting from persons who concededly desired to attend the meeting and from news media until it was too late for any

---

6. *Ahnert* interpreted the open meeting law as it existed before its amendment in 1978. 126 Ariz. at 475 n. 1, 616 P.2d at 935 n. 1. The amendment in 1978 contains the "declaration of public policy" previously quoted, A.R.S. § 38–431.09. Laws 1978, Ch. 86, § 7.

meaningful dissemination. That fact must be viewed against the background of a publicly announced postponement of consideration of the controversial ordinance until 5:00 p. m. on Monday afternoon. Even though council member Cusack was unavailable, plans for the early morning meeting proceeded apace, and the established facts and circumstances disclose an attempt to give only the minimum notice required by the open meeting law. We have determined that the notice did not meet the required standard. It violated the express intent and declaration of public policy of the open meeting law. A.R.S. § 38–431.09.

It is of course true that the appellee for-profit corporations had their own substantial interests to protect. But presumably there are other properties within the vast expanse encircled by the strip annexation whose owners will be free of the narrowing of their options which the strip annexation imposed.

Under all the circumstances, we are of the opinion that the situation calls for the imposition of attorney's fees against Scottsdale in favor of the successful appellees. We believe that our decision in this regard gives effect to the intent that the legislature has expressed in the open meeting law and which is set forth in the declaration of public policy.

Summary judgment for the appellees is affirmed. The cause is remanded to the superior court for ascertainment of the proper amounts to be awarded to appellees for attorney's fees in connection with the litigation in the superior court.

The appellees have requested attorney's fees for defending the appeal. Our decision indicates the propriety of such an award, and the appellees may particularize their requests in their statement of costs. Rule 21(c), Rules of Civil Appellate Procedure.

The cause is remanded for further proceedings in conformity herewith.

CONTRERAS, V. C. J., and OGG, J., concur.