MODERN UPHOLSTERED CHAIR COMPANY, INC.,
Plaintiff in Error,

*v.*

JOHN S. HENRY, Defendant in Error.

376 S. W. 2d 441

(*Knoxville,* September Term, 1963.)

Opinion filed March 5, 1964.

476

Robert R. Campbell, Knoxville, of counsel, Hodges, Doughty & Carson, Knoxville, William H. Inman, Morristown, of counsel, Taylor & Inman, Morristown, for plaintiff in error.

C. Frank Davis, Morristown, for defendant in error.

Mr. Justice Holmes delivered the opinion of the Court.

This is a Workmen's Compensation case in which the employee recovered benefits for 75% permanent partial disability to the body as a whole, resulting from a heart attack alleged to have arisen out of and in the course of his employment by the defendant. Upon the overruling of its motion for a new trial, the employer has duly appealed to this Court and assigned errors.

The material facts are that the employee suffered a heart attack shortly before midnight on Sunday, September 23, 1962, after having retired at about 9:00 P.M., that evening. He had last worked for the employer the morning of Saturday, September 22, 1962. This was the second serious heart attack sustained by this employee.

He testified that in November 1960, on a Monday morning, as he was leaving home to go to work, he suffered a heart attack, which was diagnosed by his doctor as an acute coronary thrombosis. Six months after this heart attack of November 1960, his doctor released him to return to work when he felt able to do so. He returned to the defendant company approximately eleven months after this heart attack and did no work from November 1960 until October 1961. He worked regularly for the defendant company from October 1961 until September 1962.

The employee testified that, when he went back to work for the defendant company in October 1961, he was required to sign some papers before he was allowed to return to work. When asked, "Were they read to you?", he answered, "No, sir, not all of it, no."

He admitted signing the paper and identified his signature thereto. He further testified:

"A. Percy Monroe told me that I couldn't go back to work without signing these papers, and he said it was about my heart.

"Q. Said it was about your heart?

"A. Yeah, and he said the insurance won't work you, unless I sign these papers."

The document which the employee signed on this occasion as a prerequisite to returning to work for the defendant in October 1961 was a Notice of Waiver, pursuant to T.C.A. sec. 50-1109, as amended by Ch. 339 of the Act of 1961. This Notice of Waiver is as follows:

"As provided in Section 50-1109 of the Tennessee Code Annotated, notice is hereby given that

Silas Henry
_____
(employee or prospective employee)
of Modern Upholstered Chair Co., Morristown, Tenn.
_____
(employer)          (address)

hereby gives written notice to the Division of Workmen's Compensation, Tennessee Department of Labor, 508 State Office Building, Nashville, Tennessee, of his waiver of compensation benefits for any aggravation or repetition of heart disease, heart attack or coronary failure or occlusion. The undersigned does hereby

specifically waive any and all claims for benefits either for himself or for anyone else claiming by or through or on account of him which may arise in the future on account of the aforesaid heart condition.

Copy of medical statement giving the prior history of the heart condition is attached hereto.

Witness:                                    Silas Henry /s/
                                            ─────────────
Fredda S. Smith, R.N. /s/                   (Employee)

  Copy was mailed                    10/19/61
  to Dept. of Labor''                ─────────
                                            (date)

The nurse who witnessed the employee's signature testified without contradiction that she mailed this Notice of Waiver to the Tennessee Department of Labor in Nashville. She was unable to recall whether or not there was a medical statement attached to the Notice of Waiver when she so mailed it. After the execution of the Notice of Waiver, the employee was reemployed by the defendant.

This waiver was not pleaded as a defense in the original answer of the defendant, however, at the beginning of the trial the defendant moved that it be allowed to amend its answer to plead the waiver as provided for by T.C.A. sec. 50-1109 as a defense in this case. The record shows the following then occurred:

"THE COURT: Do you join issue?

"MR. DAVIS: We object to the amendment on the ground that on May 18, 1963 the defendant filed an answer in this case and did not rely upon a waiver when it filed that answer, and we say it comes too late.

"THE COURT: Overruled. They have the right to file it.

"MR. DAVIS: We further object to it on the ground that it does not comply with Chapter 339 of the Acts of Tennessee.

"THE COURT: Let it be overruled."

There was a full hearing as to the circumstances of the execution of the waiver and the issue of the validity of the waiver was fully tried. At the conclusion of the trial, the Trial Judge declined to allow the defendant to file a written amendment to its answer setting up the defense of the waiver.

■ The Trial Judge, as shown by the bill of exceptions, properly allowed the defendant a trial amendment to set up the waiver as a defense. The case was fully tried on the issue of the effect of the waiver. The trial amendment having been properly allowed, the case is before this Court for review on the issue of the validity and legal effect of the waiver executed by the petitioner. The Trial Judge held the waiver was not a bar to petitioner's action. In so doing, he stated:

"Now, the question as to this waiver, the Court holds that the Company didn't comply with the law, and that this waiver wasn't valid. The Court holds that this man is illiterate, hard working, the Court can look at him and tell from his complexion there is something seriously wrong with him."

The language of the amendment to T.C.A. sec. 50-1109 is as follows:

"When an employee or prospective employee has a prior history of heart disease, heart attack or coronary

failure or occlusion, he (employee) may be permitted to waive in writing compensation from his employer or future employer for claims growing out of an aggravation or repetition of such condition, such waiver to be evidenced by filing with the commissioner of labor of the state of Tennessee, a written instrument to which shall be attached a copy of a medical statement giving the prior history of such condition, and in all such cases claims for workmen's compensation benefits growing out of an aggravation or repetition of such condition by such employee or his dependents shall be barred.

"No employer shall require the execution of a waiver by any employee who is at work on the effective date of this Act unless such employee subsequently suffers a heart condition as defined herein."

This Act took effect March 17, 1961. The petitioner was not at work on the effective date of this amendment, but, as stated, was off from work from November 1960 to October 1961 because of his prior heart attack.

██ The proper interpretation of the 1961 Amendment to T.C.A. sec. 50-1109 has not heretofore been considered by this Court. The purpose of this amendment was to enable employees with a history of heart trouble to be employed when otherwise industry would not put them to work because of the potential claim of further disability from a recurrence of the heart trouble. This is a salutary amendment to the compensation act designed to aid in the employment of those who are handicapped in obtaining employment by reason of a prior history of heart disease or heart attack. It is a matter of common

knowledge that most employers in industry require a physical examination as a prerequisite to employment and that those with a history of heart disease or heart attack have difficulty in obtaining employment because of their susceptibility to further heart difficulty. This statute should be construed liberally in order to carry out its purpose.

The reason for the requirement that a medical report accompany the notice of waiver is to prevent an employer from taking such a waiver from an employee who does not in fact come within the provisions of the amendment.

There is no controversy whatever in this case as to the fact that the employee suffered a heart attack, which was diagnosed as acute coronary thrombosis, in November 1960. Because of this heart condition, he did not again seek to return to work until October 1961. The bona fides of this employee's history of heart attack is not questioned by anyone, nor is there any claim of any fraud practiced upon the employee in obtaining his signature to the waiver. He was anxious to return to work in October 1961 and the execution of the waiver in conformity with the amendment to T.C.A. sec. 50-1109 was required as a prerequisite to his re-employment because of his prior history of acute coronary thrombosis. The nurse who witnessed the employee's signature to the "Notice of Waiver" testified that she personally mailed the notice to the Tennessee Department of Labor in Nashville. This proof carries with it a presumption that it was received in due course by the addressee, as stated in *W. E. Richmond & Co. v. Security National Bank,* 16 Tenn.App. 414, 426, 427, 64 S.W.2d 863, 869-870.

"* * * The general rule is that when it is shown that a letter has been deposited in the post office properly stamped and correctly addressed to the true place of residence of the person to whom it is sent, it is presumed the addressee received it in due course of the mail.

\* \* \* \* \* \*

"It has also been held that evidence that letters were 'sent' in the absence of proof to the contrary or any inquiry as to the mode, raises a presumption of their receipt by the addressee."

██ If an employee could defeat the application of the statute authorizing the waiver by stating that he did not fully understand what he signed, no employer could rely upon such a waiver in determining to give employment to an employee handicapped by history of heart disease or heart attack and the purpose of the statute would be defeated. In such case, the employee is met by the rule stated in *DeFord v. National Life & Accident Ins. Co.*, 182 Tenn. 255, 267, 185 S.W.2d 617, 622.

" 'A party's mere ignorance, occasioned by his limited intelligence and understanding of the language and of the contents of the contract which he voluntarily executes, is not, in the absence of fraud, a ground for avoiding it, although it is different from what he supposed. So, where a person cannot read the language in which a contract is written, it is ordinarily as much his duty to procure some person to read and explain it to him before he signs it as it would be to read it before he signed it if he were able so to do, and his failure to obtain a reading and an explanation of it is such gross

negligence as will estop him from avoiding it on the ground that he was ignorant of its contents.' ''

In applying this same rule in *Richardson et al. v. Mc-Gee,* 193 Tenn. 500, 504, 505, 246 S.W.2d 572, 574, the Court held:

"Under these established facts, we think the rule is absolute, that in the absence of fraud or sharp dealing, one is estopped to repudiate his contract, or avoid the effect of the execution of a contract, when by negligence or indifference, he has failed to read it, or to have it read to him. In the absence of fraud or deceit, the rule is the same for those who can and those who cannot read, and the basis of the rule is one of estoppel, the test being negligence and indifference, and not illiteracy or incapacity."

■ The "Notice of Waiver" itself recites that a copy of medical statement giving the prior history of the heart condition is attached. The sole deficiency claimed in the evidence relating to the waiver of notice is that the nurse who mailed the notice in October 1961 was unable to recall when testifying in July 1963 that a medical report accompanied the "Notice of Waiver". No effort was made to show that the Department of Labor of the State ever failed to accept the "Notice of Waiver" as valid and binding under the statute, and there is no controversy as to the medical history of the employee.

At least two of our sister states have had occasion to pass upon similar provisions in their Workmen's Compensation Acts authorizing a waiver of the benefits of the Act by employees under specified conditions. In *Jewell Ridge Coal Corp. v. Vance,* 203 Va. 557, 125 S.E. 2d 879, the employee contended that the waiver author-

ized under the Virginia statute was invalid because of the employee's inability to read or write and because of deficiency in the medical report. In overruling this contention, the Virginia Court, at page 882 of 125 S.E.2d, stated:

"The Commission erred in awarding compensation under the related circumstances. In doing so, it has, in effect, overturned its prior approval of the waiver and without just cause. There is no suggestion that the execution of the waiver or its approval was procured by fraud. As the dissenting opinion of Commissioner Nuckols aptly says 'To allow recovery in the case at bar is to make a mockery of the statute.' Furthermore, it would defeat the purpose of the statute in encouraging the conditional employment of such persons. For if the employer here cannot rely on this waiver, approved by the Commission in the manner provided in the statute, it can never safely employ or re-employ one who may later become incapacitated by the particular disease specified in the waiver."

In *Matthews v. University of Texas* (Tex.Civ.App.) 295 S.W.2d 270, the widow of a deceased employee, who had executed a waiver of compensation benefits under the Texas statute, attacked the validity of such waiver. In holding the waiver valid and enforceable, the Court, at page 276 of 295 S.W.2d stated:

"Our Legislature had the right and duty in setting the public policy of our State to enact such provisions as it deemed necessary to make compensation insurance available to certain State institutions employing labor, and in so doing it had the legal right to determine whether an applicant for employment was physically

fit to be covered by compensation insurance, and if such prospective employee was not physically fit and desired to waive the benefits of the compensation statute in order to obtain a job that he could not get without waiving such benefits, we see no injustice to such employee or his surviving beneficiaries."

Giving to the statute, T.C.A. sec. 50-1109 as amended, a proper construction, the undisputed proof in the case at bar shows a sufficient compliance with this Code provision; therefore, the third assignment of error of the plaintiff in error is sustained. In view of our holding as to the validity of the waiver, we deem it unnecessary to discuss the other assignments.

The judgment of the Trial Court is reversed and the case is dismissed.