**U.S. LIFE TITLE INSURANCE COMPANY OF NEW YORK,**
Plaintiff/Appellant,

v.

**DEPARTMENT OF COMMERCE AND INSURANCE OF the STATE OF TENNESSEE,** Defendant/Appellee.

**STEWART TITLE GUARANTY COMPANY,** Plaintiff/Appellant,

v.

**DEPARTMENT OF COMMERCE AND INSURANCE, DIVISION OF INSURANCE, STATE OF TENNESSEE, and Elaine A. McReynolds in her official capacity as Commissioner, Defendants/Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 23, 1988.

Fred E. Cowden, Jr., Nashville, for U.S. Life Title Ins. Co.

Linda A. Ross, Gilbert & Milom, Nashville, for Stewart Title Guar. Co.

W.J. Michael Cody, Atty. Gen. & Reporter, Gina J. Barham, Asst. Atty. Gen., Nashville, for defendants/appellees.

William F. Kirsch, Jr., Eugene J. Podesta, Jr., Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, for Amicus Curiae.

## OPINION

KOCH, Judge.

This appeal involves the validity of the rules regulating title insurance rates promulgated by the Commissioner of Commerce and Insurance [1] in 1983. Two title insurance companies challenged the rules in the Chancery Court for Davidson County on the grounds that they were not promulgated properly, that they were beyond the Commissioner's rulemaking authority, and that they were unconstitutional. The trial court upheld the validity of the rules. The insurance companies have appealed. We find that the rules are invalid because they were not promulgated in accordance with Tenn.Code Ann. § 56–35–122 (1980).

## I.

Title insurance companies doing business in Tennessee are required to meet the requirements of the Title Insurance Law.[2] The law vests regulatory responsibility with the Commissioner of Commerce and Insurance ("commissioner"), including the authority to promulgate rules necessary for the administration of the law. The regulatory framework originally put in place in 1955 remained relatively unchanged until 1980 when the General Assembly enacted substantial revisions to the Title Insurance Law.[3]

The 1980 legislation dealt with the manner in which title insurance companies computed their rates and reported their costs. Accordingly, the commissioner was required to amend the rules pertaining to the computation of title insurance rates. The commissioner appointed a committee to assist in drafting the new rules.

The committee consisted of persons familiar with the title insurance business in Tennessee, but not every one of the twenty-four title insurance companies doing business in Tennessee was represented. Two of the companies that did not have a representative on the committee were Stewart Title Guaranty Company ("Stewart") and USLife Title Insurance Company of New York ("USLife").

The committee submitted its recommendations for the new rules in July, 1983. The commissioner decided to use the recommendations as the basis for a rulemaking hearing. On July 29, 1984, a staff attorney for the Division of Insurance filed a notice of rulemaking hearing with the Secretary of State. The notice, which appeared in the August 15, 1983 edition of the *Tennessee Administrative Register,* did not contain the text of the proposed rules but did state that the commissioner intended to conduct a rulemaking hearing concerning amendments to Rule 0780-1-12.

After the notice was filed with the Secretary of State, the staff attorney instructed her secretary to mail copies of the notice and the proposed rule to all the title insurance companies doing business in Tennessee. However, the secretary only sent out copies of the notice to the companies whose addresses she found in the rate files provided by one of the department's actuaries. The secretary did not prepare transmittal letters or a record of the companies to whom the notices were addressed. The staff attorney assumed that her instructions had been carried out, and no one in the department checked the secretary's

---

**1.** Elaine A. McReynolds has been substituted as the Commissioner of Commerce and Insurance in accordance with Tenn.R.App.P. 19(c).

**2.** *See* Act of March 10, 1955, ch. 173, 1955 Pub. Acts 652. The Title Insurance Law is now codi-

fied at Tenn.Code Ann. §§ 56–35–101 through 132 (1980 & 1988 Supp.).

**3.** *See* Act of April 16, 1980, ch. 857, 1980 Pub. Acts 1105.

work even though she had never sent out rulemaking hearing notices before.

The commissioner conducted the rulemaking hearing on September 7, 1983. Representatives of nine title insurance companies attended, but neither Stewart nor USLife were among them because they never received a copy of the notice. The commissioner received statements both in favor of and opposed to the proposed rules. At the conclusion of the hearing, the commissioner announced that the record would be left open for two weeks to permit interested parties to file additional comments.

Representatives of both Stewart and US-Life testified at trial without contradiction that they were unaware of the hearing until after it had been held. USLife's employees found out about the hearing two days after it had been held and submitted written objections to the proposed amendments while the record remained open. Stewart's representatives did not find out about the hearing until two weeks after it took place. They did not file written objections to the rule.

The commissioner approved the new rules on September 29, 1983. They were transmitted to the Attorney General and Reporter for review and were filed with the Secretary of State on January 20, 1984. They became effective on February 19, 1984.

On June 29, 1984, Stewart and USLife requested the commissioner to issue a declaratory order concerning the validity of the new rules. They were notified on September 7, 1984 that their requests had been denied and were directed to file their rates and supporting financial and statistical data in accordance with the new rules.

Both companies filed their complaints for declaratory judgment on September 21, 1984, challenging the manner in which the rules were promulgated, their constitutionality, and the commissioner's authority to promulgate them. The trial court upheld the validity of the rules, and the companies have appealed, raising the same three issues they raised in the trial court. We find the notice issue to be dispositive.

## II.

### Notice Requirements in Rulemaking Proceedings

Due process and sound governmental policy require giving the public an opportunity to participate in rulemaking proceedings that might affect private business interests or the personal liberties of private citizens. 3 B. Mezines, J. Stein & J. Gruff, *Administrative Law* § 15.03[1], at 15–23 (1988); 1 F. Cooper, *State Administrative Law* 135 & 151 (1965). Notice provides the vehicle for public participation, and, therefore, adequate public notice is an essential part of any rulemaking proceeding. *Salmon Brook Convalescent Home, Inc. v. Commission on Hosps. & Health Care,* 177 Conn. 356, 417 A.2d 358, 362–63 (1979); *Costa v. Sunn,* 64 Haw. 389, 642 P.2d 530, 533 (1982); 1 C. Koch, *Administrative Law and Practice* § 4.4 (1985).

The notice requirement has a three-fold purpose. First, it insures that interested parties are made aware of the substance of any proposed rule that might be adopted. *Dorignac v. Louisiana State Racing Comm'n,* 436 So.2d 667, 669 (La.Ct.App. 1983); *Bassett v. State Fish & Wildlife Comm'n,* 27 Or.App. 639, 556 P.2d 1382, 1384 (1976); 73 C.J.S. *Public Administrative Law and Procedure* § 104 (1983). Second, it enables interested parties to express their views concerning the proposed rule. *Cheshire Convalescent Center, Inc. v. Commission on Hosps. & Health Care,* 34 Conn.Supp. 225, 386 A.2d 264, 271 (C.P. 1977); *Louisville & Jefferson County Planning & Zoning Comm'n v. Ogden,* 307 Ky. 362, 210 S.W.2d 771, 772–73 (1948); 2 Am.Jur.2d *Administrative Law* § 279 (1962). Third, it provides the agency with an opportunity to educate itself concerning the impact a proposed rule will have on the affected parties. *Salmon Brook Convalescent Home, Inc. v. Commission on Hosps. & Health Care,* 417 A.2d at 363; *Bassett v. State Fish & Wildlife Comm'n,* 556 P.2d at 1384.

Adequate notice resolves many of the concerns over the fairness of administrative rulemaking. It gives interested per-

sons the opportunity to confront the agency's factual suppositions and policy preconceptions. 1 C. Koch, *Administrative Law & Practice* § 4.4 (1985). It also forces agencies "to justify their quasi-legislative rulemaking before an informed and skeptical public." *State v. Department of Health and Human Servs.*, 670 F.2d 1262, 1281 (3d Cir.1981).

### III.

### Applicable Notice Requirements

■ The General Assembly has the prerogative to prescribe the manner in which notice of rulemaking proceedings should be given. It first established uniform notice requirements in 1974 when it enacted the Uniform Administrative Procedures Act ("UAPA").[4] One year later, it prescribed the notice requirements presently found in Tenn.Code Ann. § 4–5–203 [5] which call for notice by publication in the *Tennessee Administrative Register*. Notice by publication does not require that interested persons receive actual notice of the pending rulemaking proceeding; substantial compliance with Tenn.Code Ann. § 4–5–203(a)(1) is sufficient. Thus, Tenn.Code Ann. § 4–5–203(d) provides:

> Failure of any person to receive notice of a hearing on proposed rulemaking is not grounds for invalidating the resulting rule if notice of the hearing was published as provided in section (a)(1) of this section.

The UAPA's notice requirements were only intended to be minimum requirements. The General Assembly did not desire to supplant or relax the more stringent notice procedures many agencies were already required to follow. Thus, Tenn.Code Ann. § 4–5–203(a)(1) provides that, in addition to publishing notice in the *Tennessee Administrative Register*, agencies must also provide the notice required by any other statute "applicable to the specific agency or a specific rule or class of rules under consideration."

The trial court found that Tenn.Code Ann. § 4–5–203(d) applied not only to the UAPA's publication procedures but also to the independent notice requirements found in other statutes. We cannot agree with that conclusion because it renders illusory the requirement in Tenn.Code Ann. § 4–5–203(a)(1) that other statutory notice procedures must be followed.

A statute should not be construed in a way that renders its provisions meaningless. *Tasco Developing & Bldg. Corp. v. Long*, 212 Tenn. 96, 104, 368 S.W.2d 65, 68 (1963); *Azbill v. Azbill*, 661 S.W.2d 682, 686 (Tenn.Ct.App.1983). It should be read as a whole, *Brooks v. Fisher*, 705 S.W.2d 135, 137 (Tenn.Ct.App.1985), and its inconsistent provisions should be reconciled. *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn.1975); *City of Caryville v. Campbell County*, 660 S.W.2d 510, 512 (Tenn.Ct.App. 1983).

■ Tenn.Code Ann. § 4–5–203(a)(1) and Tenn.Code Ann. § 4–5–203(d) need not be inconsistent. The former requires compliance with all applicable notice procedures. The latter relaxes the need for actual receipt of the notice when only notice by publication is required. Thus, if an agency is required by statute to give personal notice of a pending rulemaking proceeding, it must not only give notice by publication but it must also give personal notice to those entitled to it.

The Title Insurance Law imposes independent procedural constraints on the commissioner's rulemaking power. Tenn.Code Ann. § 56–35–122 provides, in part, that:

> no such rule or regulation shall take effect until the same shall have been duly filed in the commissioner's office and until and after the expiration of thirty (30) days written notice to all insurance companies doing business in the state of Tennessee and after a hearing, if such shall have been requested in writing by any title insurance company prior to the termination of said thirty-day period.

---

**4.** Act of March 29, 1974, ch. 725 §§ 3 & 4, 1974 Pub.Acts 945, 948–52. The UAPA is codified at Tenn.Code Ann. § 4–5–101 through 4–5–324 (1985 & Supp.1988).

**5.** Act of May 5, 1975, ch. 370 § 8, 1975 Pub.Acts 927, 934–38.

These procedures embody precisely the type of independent, additional notice agencies are still required to give by virtue of Tenn.Code Ann. § 4–5–203(a)(1).

■ It follows that in order to promulgate a rule affecting the title insurance business, the commissioner must comply substantially with the notice requirements of both Tenn.Code Ann. § 4–5–203(a)(1) and Tenn.Code Ann. § 56–35–122. Construed together, these statutes require the commissioner to:

1. publish notice of the pending rule-making hearing in the *Tennessee Administrative Register* as required by the UAPA;

2. file a copy of the proposed rule in the commissioner's office, and

3. provide thirty days written notice of the proposed rule to all title insurance companies doing business in Tennessee.

We now turn to the linchpin of this appeal—the meaning of Tenn.Code Ann. § 56–35–122's requirement of "thirty (30) days written notice to all insurance companies doing business in the state of Tennessee." Because of its mistaken interpretation of Tenn.Code Ann. § 4–5–203(d), the trial court held that Tenn.Code Ann. § 56–35–122 requires only that the written notice be sent, not received. We cannot agree. Notice that is a mere gesture is no notice at all. *See Burden v. Burden,* 44 Tenn.App. 312, 319, 313 S.W.2d 566, 570 (1957).

Tenn.Code Ann. § 56–35–122 requires written notice but does not prescribe the manner in which it should be given. In these circumstances, personal notice is required as a general rule. *Carefree Improvement Ass'n v. City of Scottsdale,* 133 Ariz. 106, 649 P.2d 985, 991 (Ct.App.1982); *Johnson Serv. Co. v. Climate Control Contractors, Inc.,* 478 S.W.2d 643, 645 (Tex.Civ.App.1972); 58 Am.Jur.2d *Notice* §§ 22, 26 (1971); 66 C.J.S. *Notice* § 18c (1950).

Requiring written notice also carries with it the necessary implication of receipt or delivery. *Energy Regulatory Comm'n v. Kentucky Power Co.,* 605 S.W.2d 46, 51 (Ky.Ct.App.1980). Thus, as a general rule, when a statute requires written notice, the notice is not effective until it is received. *School Dist. RE–11J, Alamosa County v. Norwood,* 644 P.2d 13, 15 (Colo.1982); *Flanders v. Waterloo Community School Dist.,* 217 N.W.2d 579, 582 (Iowa 1974); *Costello v. Board of Zoning Appeals,* 3 Mass.App.Ct. 441, 333 N.E.2d 210, 212 (1975); *State ex rel. Peake v. Board of Educ. of S. Point Local School Dist.,* 44 Ohio St.2d 119, 339 N.E.2d 249, 251 (1975).

Our Court of Civil Appeals recognized the general rule in 1910 when it held:

A provision in a statute that written notice shall be given means that the original notice or a copy thereof shall be left with the party to whom the notice is to be given.

*Tennessee Cent. R.R. v. Smith,* 1 Tenn.Civ. App. 208, 210 (1910).

■ A party required to give written notice may use the mail to do so. However, in the absence of a statute or contract provision permitting service by mail[6], there must be an effective mailing in order for the notice to be valid. As a general rule, a mailed notice is not effective until it is received. *Goodman v. Jones,* 102 Ariz. 532, 433 P.2d 980, 983 (1967); *School Dist. RE–11J, Alamosa County v. Norwood,* 644 P.2d at 15–16; *Fell v. Bureau of Motor Vehicles,* 30 Ohio App.2d 151, 283 N.E.2d 825, 832 (1972), *cert. denied,* 419 U.S. 1010, 95 S.Ct. 330, 42 L.Ed.2d 285 (1974); *Bartlam v. Tikka,* 50 Or.App. 217, 622 P.2d 1133, 1136 (1981); 58 Am.Jur.2d *Notice* § 27 (1971).

### IV.

### The Commissioner's Proof of Effective Notice

The party required to give notice has the burden of proving that effective notice has

---

**6.** *Cherokee Ins. Co. v. Hardin,* 202 Tenn. 110, 302 S.W.2d 817 (1957), has no application in this case because the insurance policy being construed therein contained a provision stating that

"[t]he mailing of notice ... shall be sufficient proof of notice." Tenn.Code Ann. § 56–35–122 does not contain a provision permitting notice by mail.

been given. 58 Am.Jur.2d *Notice* § 32 (1971); 66 C.J.S. *Notice* § 21a (1950); *see also R. W. Hartwell Motor Co. v. Hickerson,* 160 Tenn. 513, 527, 26 S.W.2d 153, 158 (1930). Thus, the commissioner had the burden of proving that the steps taken to notify the title insurance companies of the pending rulemaking proceeding complied with Tenn.Code Ann. § 56–35–122. In other words, the commissioner had the burden of proving that the written notice concerning the proposed rule was received by the companies entitled to receive it.

■ There are two ways to prove that a piece of mail has been received. The first is by direct proof of delivery and receipt. The second is by proof that the letter was duly mailed because proof of due mailing raises a presumption that the letter was received. *Southern Regional Indus. Realty, Inc. v. Chattanooga Warehouse & Cold Storage Co.,* 612 S.W.2d 162, 164 (Tenn.Ct. App.1980); 9 J. Wigmore, *Evidence in Trials at Common Law* § 2519(A) (rev.1981); 29 Am.Jur.2d *Evidence* § 193 (1967); 31A C.J.S. *Evidence* § 136 (1964). There is no direct evidence that the written notices were received by Stewart or USLife. Therefore, it was incumbent on the commissioner to present evidence that the notices were duly mailed.

■ Proving that a letter was duly mailed requires evidence that the letter was properly addressed, properly stamped, and duly deposited with the post office. *Modern Upholstered Chair Co. v. Henry,* 213 Tenn. 475, 482–83, 376 S.W.2d 441, 444 (1964); *W.E. Richmond & Co. v. Security Nat'l Bank,* 16 Tenn.App. 414, 426, 64 S.W.2d 863, 869 (1933); 66 C.J.S. *Notice* § 18e(2) (1950).

■ The commissioner's proof that the notices were duly mailed consisted of (1) the testimony of the secretary who prepared the notices, (2) the testimony of another employee who provided the secretary with the files from which the addresses were obtained, (3) the testimony of companies that received the notice, and (4) the presumption that governmental officials perform their duties.

Both Stewart and USLife categorically denied receiving the notice. Their denials, uncontradicted by direct evidence, created an issue of fact for the trial court to decide. *W.E. Richmond & Co. v. Security Nat'l Bank,* 16 Tenn.App. at 426, 64 S.W.2d at 869; 9 J. Wigmore, *Evidence in Trials at Common Law* § 2519(B) (rev.1981).

In its December 19, 1986 memorandum opinion, the trial court found that the secretary "sent the notices to the companies that she was given files on." We construe this to mean that the trial court determined that the secretary duly mailed written notices to all title insurance companies doing business in Tennessee. Our independent review of the record leads us to conclude that the evidence preponderates against this finding.

The commissioner's evidence of due mailing is of the weakest sort. The secretary who prepared the notices conceded that she had no independent recollection of preparing or mailing them. She also admitted that she could not describe the department's standard procedures for giving notice of a rulemaking proceeding because she had never sent out rulemaking notices before.

Notwithstanding the secretary's inexperience, no one in the department checked her work. She kept no documentary evidence in the form of copies of transmittal letters, return receipts, registration cards, or master mailing lists to show to whom the notices were sent. The secretary did not affix postage to the letters and did not mail them herself. Her testimony is insufficient to support a presumption that the letters were mailed in the usual course of the department's business because such an inference requires testimony from a witness who has direct, personal knowledge that the notices were handled in the usual course of business. *See United Bank of Denver v. Don,* 527 P.2d 1184, 1186 (Colo. Ct.App.1974).

In the face of this evidence, the representatives of not one but two insurance companies testified that their companies did not receive written notice of the rulemaking hearing. Their testimony was not

contradicted or impeached, and there is no basis in the record to conclude that the trial court did not accredit their testimony.

Substantial compliance with statutory notice requirements is a necessary prerequisite to valid rulemaking proceedings. In light of the importance of adequate notice and the effect the proposed rules have on both the title insurance industry and consumers, we find that the commissioner failed to prove substantial compliance with Tenn.Code Ann. § 56–35–122. Accordingly, the 1983 amendments to Rule 0780–1–12 are invalid and unenforceable. *See Association of Condominiums v. Department of Revenue,* 431 So.2d 748, 750 (Fla.Dist.Ct. App.1983); *White Bear Lake Care Center v. Minnesota Dep't. of Pub. Welfare,* 319 N.W.2d 7, 9 (Minn.1982).

### V.

Having found that the 1983 amendments to Rule 0780–1–12 were not properly promulgated, it is unnecessary to reach the issues concerning the constitutionality of the amended rules or the scope of the commissioner's rulemaking power. The judgment of the trial court is reversed, and the case is remanded with directions that an order be entered in accordance with this opinion. The costs of the appeal are taxed to the Department of Commerce and Insurance for which execution, if necessary, may issue.

TODD, P.J., and CANTRELL, J., concur.