IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 3, 2024 Session

**BRYAN HIBDON v. DANIELLE GOYNES**

**Appeal from the Juvenile Court for Cannon County**
**No. SUP 464 Matthew D. Cowan, Judge**

_____

**No. M2024-00290-COA-R3-JV**

_____

A father petitioned a Tennessee court to modify its previous parenting plan. The father lived in Tennessee, but the mother and the child lived in Arkansas. Claiming Tennessee was an inconvenient forum, the mother moved to transfer the case to Arkansas. The court denied the transfer request. Later, the court entered a default judgment against the mother as a sanction for her failure to appear for her deposition. After hearing proof, it adopted the father's proposed parenting plan. On appeal, the mother contends that the trial court lacked subject matter jurisdiction to modify the parenting plan. She also challenges the court's denial of her transfer request, its refusal to set aside the default judgment, and the adoption of a modified plan. We conclude that the court erred in modifying the parenting plan without conducting a best interest analysis. So we vacate the adoption of a modified plan and remand for further proceedings on this issue. In all other respects, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part, Vacated in Part, and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

E. Evan Cope and Katharine Driver, Murfreesboro, Tennessee, for the appellant, Danielle Goynes.

L. Jeffery Payne and Laurie Y. Young, Murfreesboro, Tennessee, for the appellee, Bryan Hibdon.

**OPINION**

**I.**

Bryan Hibdon ("Father") and Danielle Goynes ("Mother") have one child together, a daughter born in 2010. Shortly after the child was born, the Cannon County Juvenile Court adopted an agreed parenting plan that gave the unwed parents equal parenting time.

At the parents' request, the court adopted an agreed modified plan in June 2021. The modified plan allowed Mother to relocate to Arkansas with the child. After the move, the child spent most of her time—268 days a year—in Arkansas with Mother. She visited Father in Tennessee one weekend every month, plus various holidays and school breaks, and two months in the summer.

Father petitioned to modify the parenting plan about a year later. As grounds, he alleged that Mother repeatedly violated the visitation schedule in the existing plan.[1] She often arrived late at the exchange point and, sometimes, failed to appear at all. Further, he claimed that, since the move, Mother had not followed the treatment plan for the child's medical condition. Based on conversations with the child, he was also concerned about exposure to domestic violence. According to Father, Mother moved to Arkansas to escape domestic violence issues with her boyfriend, whom she had since married. Father proposed that the court reverse the current custody arrangement and make him the primary residential parent.

Asserting that Tennessee was an inconvenient forum, Mother asked the court to decline to exercise jurisdiction over the custody issue and either dismiss Father's petition or transfer the proceeding to an appropriate Arkansas court. *See* Tenn. Code Ann. § 36-6-222 (2021). She pointed out that the child had now lived in Arkansas for almost a year and a half. In Mother's view, most of the evidence concerning the child's current welfare was in Arkansas. She attended school and church in that state. Her primary care provider was in Arkansas as well as multiple family members and friends.

Father countered that the child still visited him on a regular basis in Tennessee. He did not anticipate a need to subpoena any out-of-state witnesses or evidence to establish his case. As he saw it, the modification issues could be decided based on the parties' testimony and other in-state sources. And the Tennessee court was already familiar with the parties and issues.

After a hearing, the court denied the transfer request. In the court's view, the relevant statutory factors favored the continued exercise of jurisdiction in Tennessee. Given the information presented, it did not find Arkansas to be a more appropriate forum.

---

[1] Father also petitioned to hold Mother in criminal contempt for these violations. Because Father failed to establish Mother's guilt beyond a reasonable doubt, the court ultimately dismissed the criminal contempt portion of his modification petition.

But the court advised the parties that if circumstances changed, it would revisit this issue upon request.

Having resolved the forum issue for now, the parties turned to other matters. The court entered a scheduling order requiring the parties to appear for depositions at a specified time and place. Due to some confusion on the part of Mother's counsel, Mother failed to appear. Father agreed to reschedule her deposition and served notice of a new date and time. Despite this notice, Mother never showed.

On the eve of trial, Mother's counsel moved to withdraw from further representation. Counsel asked the court to grant Mother "thirty (30) days to secure representation before this matter proceeds further." Four days later, Father moved for entry of a default judgment as a sanction for Mother's failure to appear for a deposition. *See* TENN. R. CIV. P. 37.04; *see id.* 37.02(C). Both motions were set to be heard three days before trial.

Mother did not attend the hearing. At the outset, the court granted Mother's counsel permission to withdraw. Declining to grant a continuance, the court then heard argument on Father's motion for sanctions. Given Mother's second inexplicable absence, Father urged the court to enter a default judgment. Although counsel had no explanation for Mother's absence, he advocated for a less severe sanction. After hearing both viewpoints, the court announced its intention to "move forward on a default today." Mother's counsel left the courtroom.

Upon hearing Father's proof, the court determined that entry of a default judgment was warranted. In the court's view, Mother did "not take this Court or its processes seriously." Mother failed to appear at her own deposition. She gave no notice of her change in plans. And she failed to adhere to the visitation schedule in the parenting plan. The court found that Father's proposed parenting plan, essentially a mirror image of the current plan, was in the child's best interest. It adopted Father's plan "by default."

In short order, Mother, through new counsel, filed an emergency motion to set aside the default. Relying on an affidavit from her former counsel, Mother argued that the default should be set aside based on lack of notice. Her former counsel declared that he was never served with Father's motion. Thus, Mother had no notice that Father was seeking entry of a default judgment against her. According to counsel, he left the courtroom under the false impression that the court would not hear Father's motion that day.

The court refused to set aside the default judgment. It expressly found that the affidavit from Mother's former attorney did "not accurately reflect what transpired at the hearing." And it reaffirmed its previous decision.

Mother raises multiple issues on appeal. First, she argues that the court lacked subject matter jurisdiction to modify its previous custody decision. If that argument fails, she challenges the court's denial of her transfer request, its refusal to set aside the default judgment, and the modification of the parenting plan.

A.

We begin, as we must, with subject matter jurisdiction. *See Est. of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013). Without subject matter jurisdiction a court lacks the "power to adjudicate a particular type of controversy," and the resulting judgment is void. *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). Whether subject matter jurisdiction exists is a question of law, which we review de novo, without a presumption of correctness. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

A Tennessee court has subject matter jurisdiction to modify a previous custody decision upon proof of a material change in circumstance. Tenn. Code Ann. § 36-6-101(a)(2)(B) (2021). But if the child no longer resides in Tennessee, subject matter jurisdiction can be lost. *See id.* § 36-6-217(a) (2021). The Uniform Child Custody Jurisdiction and Enforcement Act, or UCCJEA, governs continuing subject matter jurisdiction in interstate custody disputes. *Id.* Under that act, a Tennessee court retains exclusive, continuing jurisdiction to modify a prior child-custody determination unless:

> (1) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

> (2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

*Id.* Because Father resides in Tennessee, we focus on the first subsection.

A Tennessee court does not lose subject matter jurisdiction merely because the child moves to another state. *See id.* § 36-6-217 cmt. Something more is required. Continuing jurisdiction is not lost until the originating court determines that significant connections and substantial evidence are no longer available in the forum state. *Id.* § 36-6-217(a)(1). The official comments to the UCCJEA[2] clarify that the proper inquiry is whether "the

---

[2] In any dispute over the meaning of a provision of the UCCJEA, the official comments "shall

4

relationship between the child and the person remaining in the State with exclusive, continuing jurisdiction [has] become[ ] so attenuated that the court c[an] no longer find significant connections and substantial evidence." *Id.* § 36-6-217 cmt. This is a fact-sensitive inquiry. *Compare Parker v. Parker*, No. M2017-01503-COA-R3-CV, 2019 WL 994380, at *5 (Tenn. Ct. App. Mar. 1, 2019) (finding the child still had a significant connection with Tennessee such that substantial relevant evidence was available in this state), *with Graham v. Graham*, No. E2008-00180-COA-R3-CV, 2009 WL 167071, at *9 (Tenn. Ct. App. Jan. 26, 2009) (concluding that the children's connection to Tennessee was so attenuated that the Tennessee court lost jurisdiction over custody issues).

Citing an earlier decision of this Court, *Graham v. Graham*, Mother contends that the Tennessee court lost jurisdiction over this custody dispute because the sole connection to Tennessee is the child's limited visitation with Father. *See* 2009 WL 167071, at *9. In *Graham*, the children had been living in Florida for seven years when their father filed his modification petition. *Id.* at *5. They never attended school or participated in any extracurricular activities in Tennessee. *Id.* Their schools, physicians, friends, and church were in Florida. *Id.* The father even exercised some of his parenting time in Florida. *Id.* Given these facts, we found that the children lacked a significant connection to Tennessee because their only link was "that their father lives there and they visit with him during holidays and summers." *Id.* at *9. Based on this conclusion and our determination that all the evidence relevant to the allegations in the father's petition originated in Florida, we concluded that "the courts of Tennessee no longer ha[d] continuing exclusive jurisdiction over custody issues regarding these children." *Id.*

This case presents markedly different facts. When Father filed his modification petition, the child had been living in Arkansas for just over a year. She lived the previous eleven years exclusively in Tennessee. The ties she formed during those eleven years were not yet lost. She still had family in Tennessee — Father, a stepmother, and a half-sibling. Father only exercised parenting time in Tennessee. Since the move, the child had spent two summers in Tennessee as well as multiple weekends and holidays. We find these ongoing connections with Tennessee to be significant.

We also have no difficulty concluding that substantial evidence is available in Tennessee relevant to the issues raised in the modification petition. Father alleged that Mother failed to ensure that the child received necessary medical care and therapies for her condition. Tennessee doctors diagnosed the child's medical condition and recommended a treatment plan. Thus, relevant evidence about the child's medical condition was locally available. Father and his wife could testify about their observations of the child's physical condition after the move. Father complained that Mother was repeatedly late or absent at child exchanges. These events occurred in Tennessee. He also raised concerns about

---

constitute evidence of the purposes and policies underlying such sections." Tenn. Code Ann. § 36-6-203 (2021).

5

domestic violence between Mother and her new husband. A similar issue arose while Mother and the child were living in Tennessee, prompting the last modification decision. Certainly, other relevant evidence may originate in Arkansas, but substantial evidence remains available here.

B.

Even so, Mother contends that the court should have declined to exercise its continuing jurisdiction because Tennessee was an inconvenient forum. Under the UCCJEA, a court "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Tenn. Code Ann. § 36-6-222(a). The UCCJEA provides a list of factors to guide the court's decision. *See id.* § 36-6-222(b). Those factors include:

> (1) The length of time the child has resided outside this state;
> (2) The distance between the court in this state and the court in the state that would assume jurisdiction;
> (3) The relative financial circumstances of the parties;
> (4) Any agreement of the parties as to which state should assume jurisdiction;
> (5) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
> (6) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;
> (7) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child; and
> (8) The familiarity of the court of each state with the facts and issues in the pending litigation.

*Id.* After considering these factors, the court decided that, on balance, most factors weighed in favor of a Tennessee forum.

We will not disturb the lower court's decision absent an abuse of discretion. *See Busler v. Lee*, No. M2011-01893-COA-R3-CV, 2012 WL 1799027, at *2 (Tenn. Ct. App. May 17, 2012). We do not "second-guess" the decision or "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). A trial court only abuses its discretion if it applies the wrong legal standard, reaches "an illogical or unreasonable decision," or bases its decision "on a clearly erroneous assessment of the evidence." *Id.*

Mother's challenge is a narrow one. She admits that the court applied the correct law to the information presented by the parties. The pertinent facts are largely undisputed. Still, Mother insists that the court's decision was illogical or unreasonable because, in her view, the applicable factors "logically favor" Arkansas.

6

We conclude that the court made a reasonable decision on these facts. As the court noted, the child had only lived outside the state for a relatively short time. For the previous eleven years, she lived exclusively in Tennessee where she still had significant connections. *See* Tenn. Code Ann. § 36-6-222(b)(1). True, some relevant evidence was likely to originate in Arkansas. Still, the court decided that there was more evidence in Tennessee "at this point in the proceedings." *Id.* § 36-6-222(b)(5). The Tennessee court had presided over multiple custody disputes between these parties, the most recent of which involved a similar domestic violence issue. So it was more familiar with the relevant facts and issues than an Arkansas court. *Id.* § 36-6-222(b)(8). And it was well equipped to address any new domestic violence concerns. *Id.* § 36-6-222(b)(7). The court was unaware of any obstacles that would preclude a prompt resolution of this matter in Tennessee. *Id.* § 36-6-222(b)(6). A transfer meant obtaining new local counsel, which was likely to be a financial strain on these parties. *See id.* § 36-6-222(b)(3).

Mother argues that the court failed to give the evidence favoring an Arkansas forum sufficient weight. She points to the child's newly formed connections in Arkansas, the location of the alleged domestic violence, and her travel expenses. Yet the court plainly considered those facts. It simply determined that other facts favored a Tennessee forum. *See Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 306 (Tenn. 2020) ("[I]f the reviewing court determines that reasonable minds can disagree with the propriety of the decision, the decision should be affirmed." (quoting *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019))).

Mother's remaining arguments are equally unpersuasive. She complains that the court failed to treat the agreed parenting plan, which allowed her to move to Arkansas, as evidence of an agreement to litigate custody issues in Arkansas. *See* Tenn. Code Ann. § 36-6-222(b)(4). Yet she concedes that the parties never expressly agreed to litigate in Arkansas either in the agreed plan or otherwise. She also faults the court for failing to communicate with the Arkansas court as to which court could resolve this matter more expeditiously. *Id.* § 36-6-222(b)(6) & cmt. While such communication may have been beneficial, it was not required. *See id.* § 36-6-213(a).

We discern no abuse of discretion here. Faced with a choice between Tennessee and Arkansas, the court chose Tennessee. In doing so, it applied the correct legal standard and reached a logical decision based on a reasonable assessment of the evidence. *See Lee Med., Inc.*, 312 S.W.3d at 524.

## C.

Having resolved these jurisdictional concerns, we turn to the court's denial of Mother's motion to set aside the default judgment. We also review this decision for an abuse of discretion. *Youree v. Recovery House of E. Tenn., LLC*, 705 S.W.3d 193, 202

7

(Tenn. 2025). Default judgments are "disfavored under Tennessee law." *Id.* A court should set aside a default judgment "if there is reasonable doubt as to the justness of dismissing the case before it can be heard on its merits." *Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003).

Mother sought relief from the judgment under Tennessee Rule of Civil Procedure 60.02. *See* TENN. R. CIV. P. 55.01. Because she filed her emergency motion just five days after entry of the default, the appropriate vehicle for relief is Rule 59.04. *See Discover Bank v. Morgan*, 363 S.W.3d 479, 489 (Tenn. 2012). Under either rule, when a party seeks relief from a default judgment based on excusable neglect, the threshold issue is "whether the conduct precipitating the default was willful." *Id.* at 493-94. On appeal, Mother insists that her failure to appear at the default hearing was not willful because she lacked notice of the hearing date. Yet Mother's absence from the hearing was not the conduct that precipitated the default. The court entered a default judgment against Mother as a sanction for failing to appear for her deposition. *See* TENN. R. CIV. P. 37.04; *id.* 37.02.[3] Mother offers no excuse for her absence at the deposition. If a record lacks an explanation for a flagrant violation of the procedural rules, the conduct is "'willful' and therefore ineligible for relief on grounds of 'excusable neglect.'" *Discover Bank*, 363 S.W.3d at 495.

As Father points out, Mother did not make an excusable neglect argument in her emergency motion. Because the default judgment was not yet final, Mother was not required to do so. *See Youree*, 705 S.W.3d at 205 (stating that "the grounds for relief from a non-final default judgment under Rule 59.04 are not limited to those circumstances set forth in Rule 60.02"). Rule 59.04 may be used to "to correct clear error of law or to prevent injustice." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). In essence, Mother argued that the judgment was unjust because she lacked notice of the motion for sanctions. Litigants "are entitled to receive notice of important hearings and other proceedings." *Bryant v. Edwards*, 707 S.W.2d 868, 870 (Tenn. 1986). "[D]ue process requires it." *Id.*

The service requirements in the Tennessee Rules of Civil Procedure "are designed to give every reasonable assurance" that copies of important filings "actually reach adversary parties through their counsel or directly." *See* TENN. R. CIV. P. 5.01 cmt. In accordance with Rule 5, Father's motion contained a certificate of service stating that the motion, including notice of the hearing, was sent to Mother's counsel at his last known address via "United States Mail" two weeks before the hearing. *See* TENN. R. CIV. P. 5.02, 5.03. A certificate of service "is prima facie evidence that the document was served in the manner described in the certificate and raises a rebuttable presumption that it was received

_____

[3] When a party fails to appear for a properly noticed deposition, a court may "make such orders . . . as are just," including entry of "a judgment by default against the disobedient party." Default is a harsh sanction. *Shahrdar v. Glob. Hous., Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998). But it may be "appropriate 'where there has been a clear record of delay or contumacious conduct.'" *Id.* (quoting *In re Beckman*, 78 B.R. 516, 518 (M.D. Tenn. 1987)).

by the person to whom it was sent." *Orr v. Orr*, No. 01-A-01-9012-CH-00464, 1991 WL 226916, at *4 (Tenn. Ct. App. Nov. 6, 1991); *see also* TENN. R. CIV. P. 5.03. To rebut this presumption, Mother had to come forward with "credible evidence of non-receipt." *Bd. of Pro. Resp. v. Curry*, 266 S.W.3d 379, 389 (Tenn. 2008). Mother submitted an affidavit from her former attorney stating that he "was never served" with Father's motion for sanctions and, thus, Mother never received notice.

Mother complains that the court ignored or misunderstood her notice argument. To the contrary, the court acknowledged her rebuttal evidence. The affidavit created "an issue of fact for the trial court to decide." *Bd. of Pro. Resp.*, 266 S.W.3d at 389; *U.S. Life Title Ins. Co. of N.Y. v. Dep't of Com. & Ins.*, 770 S.W.2d 537, 542 (Tenn. Ct. App. 1988). And the court resolved the issue in Father's favor. It "respectfully disagree[d]" with the affidavit, finding it did "not accurately reflect what transpired at the hearing on the motion for sanctions." The evidence does not preponderate against this finding. There are no apparent mistakes in the certificate of service. Father's counsel mailed the motion to the same address used for all previous filings. While it is certainly possible for mail to go astray, Mother's counsel expressed no surprise at the hearing when the court announced the two pending motions. Nor did he alert the court that he and his client never received notice of the motion for sanctions. To the contrary, he adamantly opposed entry of such a severe sanction. Counsel did not exit the courtroom until after the court stated its intention to hear proof in support of a default judgment.

The trial court did not abuse its discretion when it declined to set aside the default judgment. Mother did not prove that she was entitled to relief from the judgment based on lack of notice. *See Henry*, 104 S.W.3d at 482. Nor did she establish that she was entitled to relief on another basis.[4] *See Discover Bank*, 363 S.W.3d at 495.

### D.

In her final issue, Mother argues that the court abused its discretion when it modified the parenting plan without conducting a best interest analysis. Our courts apply a two-step analysis to requests for modification of a permanent parenting plan. *See, e.g.*, *In re T.R.Y.*, No. M2012-01343-COA-R3-JV, 2014 WL 586046, at *11-12 (Tenn. Ct. App. Feb. 12, 2014) (primary residential parent modification); *In re C.R.D.*, No. M2005-02376-COA-R3-JV, 2007 WL 2491821, at *6 (Tenn. Ct. App. Sept. 4, 2007) (parenting time modification). The threshold issue is whether a material change in circumstance has occurred since the court adopted the current parenting plan. Tenn. Code Ann. § 36-6-101(a)(2)(B), (C). If a material change has occurred, the court must then determine

---

[4] We are troubled by the court's decision to address the motion for sanctions immediately after allowing Mother's counsel to withdraw. But Mother did not raise the court's denial of the request for a continuance as an issue on appeal or in her emergency motion to set aside the default. And Mother's counsel was allowed to present arguments on her behalf despite his withdrawal.

whether modifying the parenting plan is in the child's best interest by examining the statutory best interest factors. *Brunetz v. Brunetz*, 573 S.W.3d 173, 179 (Tenn. Ct. App. 2018). This analysis is mandatory even when the court enters a default judgment. *See Lawson v. Stewart*, No. M2016-02213-COA-R3-CV, 2017 WL 4331043, at *4 (Tenn. Ct. App. Sept. 28, 2017).

The "determination[ ] of whether a material change in circumstances has occurred" is a question of fact. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). The parent seeking a modification of the permanent parenting plan has the burden of proving a material change by a preponderance of the evidence. Tenn. Code Ann. § 36-6-101(a)(2)(B), (C). Although the court did not make an express finding of a material change, Mother concedes that "such a conclusion is supported by the [r]ecord and likely not an error." Father testified that Mother was often late to the exchange point and recently failed to appear at all. In this context, a parent's "failure[ ] to adhere to the parenting plan" may constitute a material change in circumstance. *Id.* § 36-6-101(a)(2)(B)(i). And the court found that Mother "continual[ly] violat[ed] the parenting plan." Given Mother's concession, we affirm the court's implicit finding of a material change.

But this does not end the analysis. *Armbrister*, 414 S.W.3d at 705. The court must then determine whether modification is in the child's best interest. *Burnett v. Burnett*, No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at *6 (Tenn. Ct. App. Aug. 31, 2015) (citing *Armbrister*, 414 S.W.3d at 705). Although the trial court found that the modified plan was in the child's best interest, it gave no indication as to how and why it reached that conclusion. *See Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *4 (Tenn. Ct. App. Feb. 22, 2013). The best interest analysis is a "particularly fact-intensive process." *McEvoy v. Brewer*, No. M2001-02054-COA-R3-CV, 2003 WL 22794521, at *5 (Tenn. Ct. App. Nov. 25, 2003). Tennessee Code Annotated § 36-6-106(a) lists sixteen factors that courts may consider in making a best interest determination. *See* Tenn. Code Ann. § 36-6-106(a) (Supp. 2022). A court need not "list and discuss each factor." *Keisling v. Keisling*, 196 S.W.3d 703, 723 (Tenn. Ct. App. 2005). But the court's findings should demonstrate consideration of the relevant factors. As Father admits, that is not the case here. So we vacate the court's adoption of Father's proposed parenting plan.

## III.

The Tennessee court had exclusive, continuing jurisdiction to modify the parenting plan. We discern no abuse of discretion in the court's denial of Mother's request to transfer this proceeding to an Arkansas court or in its refusal to set aside the default judgment. But because the court failed to conduct a best interest analysis, we vacate the adoption of a modified plan and remand for further proceedings consistent with this opinion. On remand, the court should consider the factors in Tennessee Code Annotated § 36-6-106(a) and determine whether modification of the parenting plan is in the child's best interest. The court may adopt the current parenting plan again or a different one that serves the child's

10

best interest.  In evaluating the child's best interest, the court may, in its discretion, choose to hear additional proof of the parties' current circumstances.  Until the court renders its decision on remand, the current, modified plan will remain in place as a temporary plan.


                                       s/ W. Neal McBrayer
                                  W. NEAL McBRAYER, JUDGE